911 F.2d 1539
 66 A.F.T.R.2d 90-5625, 59 USLW 2242, 90-2
USTC P 50,509,
20 Bankr.Ct.Dec. 1603, Bankr. L. Rep. P 73,645
 In re HOLYWELL CORPORATION, Debtor. (Two Cases)
Fred Stanton SMITH, as Trustee of the Miami Center
Liquidating Trust, Plaintiff-Appellee,
v.
UNITED STATES of America, Holywell Corporation, Miami Center
Limited Partnership, Miami Center Corporation,
Chopin Associates, Theodore B. Gould,
Defendants-Appellants,
Shutts & Bowen, Intervenor,
Bank of New York, Defendant-Appellee.
Fred Stanton SMITH, as Trustee of the Miami Center
Liquidating Trust, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant,
Holywell Corporation, Miami Center Limited Partnership,
Miami Center Corporation, Chopin Associates,
Theodore B. Gould, Defendants-Appellants,
Shutts & Bowen, Intervenor,
Bank of New York, Defendant-Appellee.
 No. 89-5862.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 18, 1990.
 
 Gary R. Allen, Chief, Appellate Section, Tax Div., Gary D. Gray, Francis M. Allegra, Robert W. Metzler, Dept. of Justice, Washington, D.C., for defendant-appellant U.S.
 Theodore B. Gould, Charlottesville, Va., pro se.
 Robert M. Musselman, Robert M. Musselman & Associates, Charlottesville, Va., for debtor Holywell Corp.
 Herbert Stettin, P.A., and Vance E. Salter, Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, Fla., for plaintiff-appellee Fred Stanton Smith, trustee.
 Barbara E. Vicevich, Miami, Fla., for intervenor Shutts & Bowen.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this bankruptcy case, we affirm the district court's ruling that a liquidating trustee was not required by the provisions of a confirmed amended Plan of Reorganization ("Plan") nor by statutory provisions to file tax returns and pay income taxes on the sale of pre-confirmation and post-confirmation properties.
 
 FACTS
 
 2
 Miami Center Limited Partnership ("MCLP"), a Florida limited partnership, obtained a construction mortgage from the Bank of New York ("BNY") to develop the "Miami Center," an office building and hotel complex in Miami, Florida. Following default on the mortgage, MCLP, Holywell Corporation, Chopin Associates, Theodore Gould, Miami Center Corporation, and other "insiders" (hereinafter collectively referred to as the "debtors") as defined in 11 U.S.C. Sec. 101(30)(C) (West Supp.1990) each filed a petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978.[1]
 
 
 3
 Both BNY and the debtors submitted competing plans of reorganization and accompanying disclosure statements to the bankruptcy court. The Internal Revenue Service ("IRS"), a creditor, received copies of the plans and disclosure statements and also received notice of all scheduled hearings before the bankruptcy court. On October 10, 1985, following overwhelming approval by the creditors, the bankruptcy court confirmed BNY's amended Plan of Reorganization. The district court affirmed the confirmation order. See Holywell Corporation v. Bank of New York, 59 B.R. 340 (S.D.Fla.1986). This court subsequently dismissed, as moot, the debtors' appeal of the confirmation order because the Plan was substantially consummated and no effective relief could be fashioned. See Miami Center Limited Partnership v. Bank of New York, 838 F.2d 1547 (11th Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).
 
 
 4
 The Plan required consolidation of the debtors' estates, establishment of a liquidating trust, and appointment of a liquidating trustee.[2] The Plan was funded by all the debtors' assets, as defined in section 541(a) of the Bankruptcy Code, including proceeds from the pre-confirmation sale of certain of Holywell Corporation's properties (hereinafter the "Washington properties") and the anticipated post-confirmation sale of the Miami Center property. The Plan had no express provision requiring the liquidating trustee to either file tax returns or pay income taxes.
 
 
 5
 The corporate debtors did not file a tax return concerning the sale of pre-confirmation properties until January 4, 1988, although any gain would have been realized during the fiscal year ending July 31, 1985.[3] At that time they requested the liquidating trustee to pay the taxes owed. Neither the corporate debtor nor the liquidating trustee filed a tax return for the fiscal year ending July 31, 1986, which would have included gains realized from the sale of the Miami Center property.
 
 PROCEDURAL HISTORY
 
 6
 The liquidating trustee filed an adversary proceeding in the United States Bankruptcy Court in December, 1987, naming the United States, BNY, and the debtors as defendants. The liquidating trustee sought a declaratory judgment concerning the obligation to file income tax returns and pay taxes, if any, in connection with the sale of the Washington properties and the Miami Center. On April 28, 1988, the bankruptcy court entered final judgment declaring that the liquidating trustee was not responsible for filing or paying income taxes.
 
 
 7
 Following entry of final judgment, both the United States and the debtors filed notices of appeal. After consolidating the appeals, the district court granted the debtors' emergency motion to stay the final judgment of the bankruptcy court. The court also granted the motion of a law firm, Shutts and Bowen, special counsel to the liquidating trustee, to intervene in the consolidated appeal for the purpose of seeking a lift of the stay in order to obtain payment of $917,000 in attorney fees.
 
 
 8
 BNY moved to dismiss the appeal, as moot, and the liquidating trustee moved for authorization to consummate the settlement with Dade County of ad valorem tax claims.
 
 
 9
 In July, 1989, the district court granted in part, and denied in part, the BNY's motion to dismiss. The court dismissed the appeal to the extent that the debtors sought to challenge the Plan based on allegations that BNY, through its plan of reorganization, attempted to defraud the government of income taxes. The district court denied the motion to the extent that the government and the debtors sought to enforce provisions of the Plan which they contended provided for the payment of income taxes. Additionally, the district court vacated its earlier stay of the bankruptcy court's final judgment.
 
 CONTENTIONS
 
 10
 The government and the debtors contend that this court has jurisdiction to decide whether the liquidating trustee is responsible for filing income tax returns and paying income taxes in connection with the sale of the properties. Insofar as the merits of the complaint are concerned, they contend that under certain provisions of the Plan, the liquidating trustee was obligated to file and pay income taxes. Additionally, they contend that certain statutory provisions of the Income Tax Code require that the liquidating trustee file and pay taxes. Moreover, they contend that once that obligation arises, the grantor trust provisions of the Internal Revenue Code do not relieve the liquidating trustee of that duty.
 
 
 11
 The liquidating trustee contends that this court lacks jurisdiction to hear this appeal because the allegations constitute a substantial modification of the Plan. Addressing the merits, the liquidating trustee contends that the debtors were required to file tax returns and pay taxes, if any, relating to the sale of pre-confirmation and post-confirmation properties.
 
 ISSUES
 
 12
 We address the following issues: (1) whether this appeal is moot; (2) whether the provisions of the Plan require that the liquidating trustee pay all applicable income taxes on the sale of the pre-confirmation and post-confirmation properties; and (3) whether the income tax laws require that the liquidating trustee pay all applicable income taxes.
 
 DISCUSSION
 A. Mootness
 
 13
 The government and the debtors contend that we have jurisdiction to decide this case despite our earlier decision dismissing their appeal of the district court's confirmation of the Plan. According to the government and the debtors, we have jurisdiction to decide whether the liquidating trustee failed to discharge his duties in accordance with the terms of the Plan. Further, they contend that we have jurisdiction to redress BNY's fraudulent act of submitting a plan of reorganization which failed to disclose the absence of any provision relating to the payment of income taxes.
 
 
 14
 The mootness doctrine, as applied in a bankruptcy proceeding, permits the courts to dismiss an appeal based on its lack of power to rescind certain transactions. See Markstein v. Massey Associates Ltd., 763 F.2d 1325 (11th Cir.1985); In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981); Miami Center Limited Partnership, 838 F.2d 1547. The mootness standard "is premised upon considerations of finality ... and the court's inability to rescind ... and grant relief on appeal." Miami Center Limited Partnership, 838 F.2d at 1553 (quoting In re Sewanee Land Coal & Cattle, Inc., 735 F.2d 1294 (11th Cir.1984)). In dismissing the debtors' previous challenge, this court was guided by "the important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained." Miami Center Limited Partnership, 838 F.2d at 1555. Mindful of that policy, we will not entertain any challenge to the Plan which seeks to modify or amend its provisions.
 
 
 15
 The district court is correct in its ruling that the allegation of fraud is an attempt to modify or alter the Plan and is therefore barred under the mootness doctrine. The allegation seeks to alter the Plan by challenging the terms and provisions which the bankruptcy court and the district court approved. We also conclude that the allegation concerning the propriety of the bankruptcy court's approval of a plan which makes no express provision for income taxes is an attempt to alter or modify the Plan and is therefore barred. The need for finality requires that we decline to address the merits of these allegations which seek to challenge the court-approved Plan.
 
 
 16
 We reject the debtors' attempt to create an exception to the mootness doctrine based on the holding of In re Seminole Park & Fairgrounds, Inc., 502 F.2d 1011 (5th Cir.1974). In In re Seminole Park, the court held that the allegation was not "a belated effort to alter or amend the plan." In re Seminole Park, 502 F.2d at 1014. In this case, however, we have concluded that the allegations seek to amend or modify the Plan. Thus, we find this case distinguishable from In re Seminole Park.
 
 
 17
 The allegation that certain provisions of the Plan and/or provisions of the Income Tax Code require the liquidating trustee to file and pay income taxes is not an attempt to modify or alter the Plan. The focus of this allegation is that the liquidating trustee failed to act in accordance with the court-approved Plan. Thus, we address the merits of this claim because it seeks to enforce existing provisions of the Plan. See In re Seminole Park, 502 F.2d 1011 (bankruptcy court has power to assure that court-approved plan is consummated in fact).
 
 B. Provisions of the Plan
 
 18
 The Plan required that the liquidating trustee acquire the trust property and dispose of it in accordance with the terms of the Plan. As stated earlier, the Plan makes no express provision for the payment of federal income taxes. Consequently, we must determine whether any of the provisions of the Plan can reasonably be interpreted as requiring the liquidating trustee to file income tax returns and pay income taxes.
 
 
 19
 The government argues that Article I of the Plan permits it to recover income taxes as an administration claim. Article I of the Plan provides for the payment of actual and necessary expenses of preserving the bankrupt estate as administration claims. The Plan conditions payment, however, to claims for which a proof of claim has been filed or a liability scheduled by the debtor. Since the IRS never filed a proof of claim for taxes and the debtors never scheduled such taxes as a liability, such a claim cannot qualify as an administration claim.
 
 
 20
 The government and the debtors also assert that section 503 of the Bankruptcy Code obligates the liquidating trustee to pay income taxes. Title 11 U.S.C. Sec. 503 provides that "an entity may file a request for payment of an administrative expense after notice and hearing." It is generally accepted that taxes incurred by a bankrupt estate fall within the definition of administrative expenses. See In re Lambdin, 33 B.R. 11 (Bkrtcy.M.D.Tenn.1983). Pre-confirmation taxes are thus recoverable under this provision. In order to recover payment for administrative expenses, however, a claim must be filed in a timely fashion. In re Holywell Corp., 68 B.R. 134, 137 (Bkrtcy.S.D.Fla.1986).
 
 
 21
 We conclude that the IRS cannot recover under section 503 for income taxes because it failed to file its claim in a timely fashion. The debtors filed for bankruptcy on August 22, 1984. The bankruptcy court established January 15, 1985, as the claim bar date. The IRS, despite having notice of the proceedings, filed no claim. In fact, it was not until the liquidating trustee filed the declaratory judgment action in December, 1987, that the government seriously asserted a claim for income taxes. In an earlier proceeding in this case, the bankruptcy court held that claims filed by the IRS on October 16, 1985, and November 6, 1985, were time-barred. A similar conclusion is clearly appropriate in this case.
 
 
 22
 Post-confirmation taxes are not recoverable as administrative expenses under 11 U.S.C. Sec. 503. In United States v. Redmond, 36 B.R. 932, 934 (Bkrtcy.D.C.Kan.1984) the court was faced with a post-petition claim by the IRS for unpaid employment and unemployment taxes. The court rejected the IRS's claim that such taxes constituted administrative expenses under 11 U.S.C. Sec. 503. The court stated that "upon confirmation of a plan of reorganization, property of the bankruptcy estate vests in the reorganized debtor, a new entity, and administration of the estate ceases. As such, the tax liability of the reorganized debtor was not incurred in administering the bankruptcy estate." United States v. Redmond, 36 B.R. at 934. As the court noted, post-confirmation tax is normally a liability of the debtor. See Redmond, 36 B.R. at 934.
 
 
 23
 We also reject the assertion that Article V of the Plan obligates the liquidating trustee to pay income taxes on the sale of post-petition properties. Article V, paragraph 6 provides:
 
 
 24
 All costs, expenses and obligations incurred by the Trustee in administering the Trust or in any manner connected, incidental or related thereto, shall be a charge against the Trust Property, and the Court, upon being satisfied as to the correctness of any and all costs, expenses and obligations, shall approve and direct the payment thereof prior to a distribution to the holders of unsecured Allowed claims.
 
 
 25
 As stated above, administration of the estate ceases upon confirmation of a plan of reorganization. See Redmond, 36 B.R. at 934. Thus, taxes which accrue post-confirmation are not incurred in administering the Trust, and are not recoverable under Article V of the Plan.
 
 
 26
 Our conclusion does not leave the government without the ability to collect taxes on the post-confirmation sale of property. It simply means that the reorganized debtor, not the liquidating trustee is responsible for such taxes.
 
 C. Statutory Requirements
 
 27
 The government and the debtors strenuously argue that 26 U.S.C. Secs. 6012(b)(3), (4) and 6151 require, as a matter of law, that the liquidating trustee file and pay income taxes. Under those provisions, the "trustee in a case under title 11, or an assignee" and the fiduciary of an individual debtor's estate are responsible for filing of returns and paying of taxes owed by a corporate and individual debtors respectively.[4]
 
 
 28
 The bankruptcy judge found that these provisions did not apply in this case. The bankruptcy judge concluded that because of the limited and essentially ministerial function assigned to the trustee by the Plan, he was a contract trustee rather than a trustee in a case under Title 11. Additionally the bankruptcy judge concluded that because of the liquidating trustee's non-discretionary duties to identify and pay allowed claims in accordance with the terms of the Plan, he was more akin to a disbursement agent than an assignee or fiduciary.
 
 
 29
 We reject the government's contention that the legislative history of 26 U.S.C. Sec. 6012(b)(3) indicates that it was intended to apply to the trustee in this case. The government suggests that because the liquidating trustee was appointed by a court which acquired jurisdiction by virtue of 11 U.S.C. Sec. 105, we should construe the liquidating trustee's appointment as that of a trustee under Title 11. Alternately, the government argues that the liquidating trustee is either an assignee, receiver, or fiduciary of the debtors and thus governed by the requirements of 26 U.S.C. Sec. 6012.
 
 
 30
 Based on our review of the statutory provisions, we agree with the district court's conclusion that 26 U.S.C. Sec. 6012 does not apply in this case. By its terms, section 6012 refers only to trustees who are appointed under Chapter 11 of the Bankruptcy Code. If Congress had intended that all trustees be subjected to the provisions of section 6012, it would have so provided. We also conclude that section 6012 was not intended to apply to a broad range of individuals without regard to the functions which they perform.
 
 
 31
 In deciding whether to extend the provisions of section 6012, we find In re Allen Wood Steel Co., 7 B.R. 697 (Bkrtcy.E.D.Pa.1980) instructive. In In re Allen Wood Steel Co., the bankruptcy court refused to extend the provisions of section 6012 to a disbursing agent under facts similar to those in this case. We agree with the district court that section 6012 does not apply to the liquidating trustee, and rely on its analysis. First, we conclude that the liquidating trustee is not a trustee under Title 11, but rather a contract trustee performing limited and essentially ministerial duties. Second, we agree that the liquidating trustee's non-discretionary duties of distributing the trust property in accordance with the Plan makes him similar to a disbursing agent rather than an assignee or fiduciary.
 
 CONCLUSION
 
 32
 We dismiss, as moot, the allegation that the bankruptcy court lacked authority to confirm the Plan, and the allegation that the Bank of New York acted fraudulently in obtaining approval of the Plan. We accept jurisdiction to decide whether the liquidating trustee breached his duty either under the terms of the Plan or other statutory provisions. We hold, however, that neither the provisions of the Plan nor the statutory provisions obligate the liquidating trustee to file income tax returns or pay taxes. Accordingly, we affirm the district court.
 
 AFFIRMED
 COX, Circuit Judge, dissenting:
 
 33
 I believe that under 26 U.S.C. Sec. 6012(b)(3) and (4) and section 6151 the liquidating trustee is obligated both to file income tax returns and to pay taxes on behalf of the corporate debtors and the estate of the individual debtor. Contrary to the court's holding, I believe that section 6012(b)(3) applies to an individual, like the liquidating trustee in this case, who is appointed as a part of a confirmed plan of reorganization and who possesses title to substantially all the debtors' assets. I further conclude that given the broad powers granted to the liquidating trustee in Article V of the Plan, he qualifies as a "fiduciary" within the meaning of section 6012(b)(4).
 
 
 34
 The court holds that "section 6012 refers only to trustees who are appointed under Chapter 11 of the Bankruptcy Code" (emphasis added). The court reasons that since the liquidating trustee was appointed to administer the Plan, he is a "contract trustee" as opposed to a trustee appointed under title 11. The plain language of section 6012(b)(3), however, makes its filing requirements applicable to a "trustee in a case under title 11 of the United States Code...." (emphasis added). While it is not readily apparent from the face of the opinion, the court seems to have equated the meaning of the phrase "a trustee in a case under title 11" with the Bankruptcy Code's definition of a trustee appointed under 11 U.S.C. Sec. 1104(a) (1979).[1] This interpretation of section 6012(b)(3) is too restrictive and fails to comport with the broad wording of the statute. Section 6012(b)(3) is properly viewed as encompassing trustees of a corporate debtor who, like the liquidating trustee, are appointed to administer a reorganization plan in a bankruptcy case. It is not limited to just those trustees who are appointed under 11 U.S.C. Sec. 1104 or section 702.
 
 
 35
 The legislative history of section 6012(b)(3) further indicates that Congress intended this section to reach a broad spectrum of persons acting in a fiduciary capacity for a corporation in bankruptcy. Committee reports suggest that the phrase "receiver, trustee in a case under title 11 of the United States Code, or assignee ..." is to be read as encompassing "receivers or other fiduciaries." H.R.Rep. No. 1337, 83d Cong., 2d Sess. 3, reprinted in 1954 U.S.Code Cong. & Admin.News 4017, 4543; and S.Rep. No. 1622, 83d Cong., 2d Sess. 3, reprinted in 1954 U.S.Code Cong. & Admin.News 4621, 5211. Thus, section 6012(b)(3) anticipates any situation where substantially all the assets of a corporation are vested in a person acting in a fiduciary capacity for the bankrupt corporation. Accordingly, the liquidating trustee, not the assetless corporate debtors, should be responsible for discharging tax obligations.
 
 
 36
 The court further holds that the liquidating trustee is more like a "disbursing agent" of the trust rather than a "fiduciary" of the individual debtor. Article V of the Plan vests the liquidating trustee with all right, title, and interest of the debtors in their estate property and empowers the trustee to administer the liquidation of that property pursuant to the Plan. The Plan authorizes the liquidating trustee not only to liquidate the debtors' property but also to manage the property "in all other ways as would be lawful for any person owning the same to deal therewith...." Article V, paragraph 3. These broad powers include the power to lease, improve or encumber the property, the authority to sue and be sued, and the power to settle litigation in which the debtors are involved and to waive rights on behalf of the debtors.
 
 
 37
 The court's attempt to characterize the liquidating trustee as simply a disbursing agent denies the reality of his rights, duties and obligations under the Plan. A mere label does not magically transform the liquidating trustee into something he is not. In fact, his job description squarely fits within the Internal Revenue Code description of a "fiduciary."[2] Consequently, he is obligated under section 6012(b)(4) to file returns on behalf of the individual debtor.
 
 
 38
 The court nonetheless analogizes the facts of this case to those in In re Alan Wood Steel Co., 7 B.R. 697 (Bankr.E.D.Pa.1980), to support its conclusion that the liquidating trustee is a "disbursing agent" instead of an assignee or fiduciary of the debtors. However, In re Alan Wood is distinguishable from the present case. In re Alan Wood involved a disbursing agent under the former Bankruptcy Act.[3] The disbursing agent in In re Alan Wood did not have possession of or hold title to the property of the debtors. Moreover, by statute he was only entitled to "distribute, subject to the control of the court, the consideration ... deposited by the debtor." 7 B.R. at 701 (quoting 11 U.S.C. Secs. 110, 743 and 737 (1976)). In this case, the liquidating trustee has possession of the debtors' property and is authorized to do more than simply distribute funds. Therefore, the liquidating trustee more closely approximates an assignee or fiduciary than a disbursing agent.
 
 
 39
 Since both section 6012(b)(3) and (4) apply to the liquidating trustee, he is obligated to file tax returns on behalf of the corporate debtors and the estate of the individual debtor. Necessarily, then, he is also responsible for the payment of those taxes under 26 U.S.C. Sec. 6151. The court's decision to the contrary encroaches upon the IRS's ability to collect taxes successfully in situations where a reorganization plan provides for the appointment of a trustee to take possesion of substantially all the debtors' assets and to administer the Plan. Although the court encourages us to take consolation in the fact that the government may seek collection of the tax monies from the reorganized debtor, it remains unclear from where that money will come.
 
 
 
 [1]
 Theodore B. Gould, a debtor, owned 100 percent of the stock of Holywell Corporation (debtor), and also served as president and director of Holywell. Holywell Corporation owned 100 percent of the stock of Miami Center Corporation ("MCC") (debtor), and Gould served as president and director of MCC. Gould and MCC were the sole general partners of Chopin Associates (debtor) and of Miami Center Limited Partnership (debtor)
 
 
 [2]
 The parties refer to the trustee created pursuant to the Plan as the "liquidating trustee." Article V of the Plan provides that "[a] Trust is hereby declared and established on behalf of the Debtors effective on the Effective Date and an individual to be appointed by the Court ... is designated as Trustee of all property of the estates of the Debtors." The trustee's responsibilities include the identification and payment of all valid claims against the estate with payment of the sum remaining to the debtors. On August 12, 1985, a United States Bankruptcy Court judge appointed Fred Stanton Smith trustee of the estate
 
 
 [3]
 Shortly after the complaint was filed, Holywell Corporation mailed a consolidated federal income tax return for the fiscal year ending July 31, 1985, to the Internal Revenue Service. The return showed a liability for taxes, interest, and penalties totalling $264,309. Holywell simultaneously demanded that the trustee pay that amount
 
 
 [4]
 Title 26 U.S.C. Sec. 6012(b)(3), (4) provides as follows:
 (3) In a case where a receiver, trustee in a case under title 11 of the United States Code, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not each party or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.
 (4) ... Returns of an estate ... of an individual under chapter ... 11 of title 11 of the United States Code shall be made by the fiduciary thereof.
 Title 26 U.S.C. Sec. 6151 provides, in pertinent part that:
 (a) [w]hen a return of tax is referred under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed....
 
 
 [1]
 11 U.S.C. Sec. 1104(a) (1979) in pertinent part reads:
 At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee--
 
 
 [2]
 A "fiduciary" is defined broadly in Sec. 7701(a)(6) of the Internal Revenue Code as "a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity."
 
 
 [3]
 In re Alan Wood Steel Co. was decided under the old Bankruptcy Act which provided for the appointment of bankruptcy trustees under Sec. 44(a), receivers under Sec. 332, and disbursing agents under Sec. 337(a). A disbursing agent is a statutorily distinct entity