# HOLYWELL CORP. ET AL. *v.* SMITH ET AL.

No. 90–1361.   Argued December 4, 1991—Decided February 25, 1992*

*Together with No. 90–1484, *United States* v. *Smith et al.*, also on certio-rari to the same court.

THOMAS, J., delivered the opinion for a unanimous Court.

*Kent L. Jones* argued the cause for the United States in No. 90–1484 and petitioners in No. 90–1361. With him on the briefs for the United States were *Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace, Gary D. Gray,* and *Francis M. Allegra.*

*Dennis G. Lyons, Stuart E. Seigel,* and *Kent A. Yalowitz* filed briefs for petitioners in No. 90–1361.

*Herbert Stettin* argued the cause for respondents in both cases. With him on the brief for respondent Smith were *Louis R. Cohen, F. David Lake, Jr.,* and *John Aramburu. Vance E. Salter, Thomas F. Noone, Edward P. Zujkowski, Mortimer M. Caplin, Walter B. Slocombe, Albert G. Lauber, Jr., Julia L. Porter,* and *James E. Salles* filed a brief for respondent Bank of New York. *Barbara E. Vicevich* filed a brief for respondent Shutts & Bowen.†

---

†A brief of *amici curiae* was filed for the State of California et al. by *Mary Sue Terry,* Attorney General of Virginia, *H. Lane Kneedler,* Chief Deputy Attorney General, *K. Marshall Cook,* Deputy Attorney General, *Barbara M. Rose,* Senior Assistant Attorney General, and *Martha B. Brissette* and *John Patrick Griffin,* Assistant Attorneys General, *Daniel E. Lungren,* Attorney General of California, *Richard Blumenthal,* Attorney General of Connecticut, *Charles M. Oberly III,* Attorney General of Delaware, *John Payton,* Corporation Counsel of the District of Columbia, *Robert A. Butterworth,* Attorney General of Florida, *Michaël J. Bowers,* Attorney General of Georgia, *Warren Price III,* Attorney General of Hawaii, *Roland W. Burris,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *Bonnie J. Campbell,* Attorney General of Iowa, *Robert T. Stephan,* Attorney General of Kansas, *William J. Guste, Jr.,* Attorney General of Louisiana, *Michael E. Carpenter,* Attorney General of Maine, *J. Joseph Curran, Jr.,* Attorney General of Maryland, *Scott Harshbarger,* Attorney General of Massachusetts, *Frank J. Kelley,* Attorney General of Michigan, *Hubert H. Humphrey III,* Attorney General of Minnesota, *Michael C. Moore,* Attorney General of Mississippi, *William L. Webster,* Attorney General of Missouri, *Marc Racicot,* Attorney General of Montana, *Robert J. Del Tufo,* Attorney General of New Jersey, *Tom Udall,* Attorney General of New Mexico, *Robert Abrams,* Attorney General of New York, *Nicholas J. Spaeth,* Attorney General of North Dakota, *Dave Frohnmayer,* Attorney General of Oregon, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *James E. O'Neil,* Attorney General of Rhode Island, *T. Travis Medlock,* Attorney General of South Carolina, *Charles W. Burson,* Attorney General of Tennessee, *Dan Morales,* Attorney General of Texas, *R. Paul Van Dam,* Attorney General of Utah, *Mario J. Palumbo,* Attorney General of West Virginia, and *Victor A. Kovner,* Corporation Counsel of the City of New York.

JUSTICE THOMAS delivered the opinion of the Court.

These cases require us to decide whether a trustee appointed to liquidate and distribute property as part of a Chapter 11 bankruptcy plan must file income tax returns and pay income tax under the Internal Revenue Code.

I

Miami Center Limited Partnership borrowed money from the Bank of New York (Bank) to develop "Miami Center," a hotel and office building complex in Miami, Florida. In August 1984, after it defaulted on the loan, MCLP and four affiliated debtors—Holywell Corporation, Chopin Associates, Miami Center Corporation, and Theodore B. Gould—each filed Chapter 11 bankruptcy petitions. The Bankruptcy Court consolidated the five cases.

Prior to confirmation of a Chapter 11 plan, the debtors represented their own bankruptcy estates as debtors in possession. See 11 U. S. C. § 1101(1). The estates of Gould and Holywell contained two principal assets: equity in Miami Center and cash proceeds from the postbankruptcy sale of certain real estate in Washington, D. C., known as the Washington Properties.

In August 1985, the Bank and other creditors approved a "Consolidated Plan of Reorganization." The plan required the debtors to give up their interests in Miami Center and the proceeds from the sale of the Washington Properties, but otherwise permitted them to remain in business. Part V of the plan provided:

> "1. A Trust is hereby declared and established on behalf of the Debtors ... and an individual to be appointed by the Court ... is designated as Trustee of all property of the estates of the Debtors ... , including but not limited to, Miami Center [and] the Washington Proceeds ... , to hold, liquidate, and distribute such Trust Property according to the terms of this Plan. The Trust shall be known as the 'Miami Center Liquidating Trust.'

"2. . . . [A]ll right, title and interest of the Debtors in and to the Trust Property, including Miami Center, shall vest in the Trustee, without further act or deed by the Debtors . . . ."   App. 41.

The plan required the trustee to liquidate and distribute all of the trust property to the creditors of the various bankruptcy estates.   It empowered the trustee to "[m]anage, operate, improve, and protect the Trust Property"; to "[r]elease, convey, or assign any right, title or interest in or about the Trust Property"; and to perform other, similar actions. *Id.*, at 42.   The plan said nothing about whether the trustee had to file income tax returns or pay any income tax due. The United States did not object to its confirmation.

The plan took effect on October 10, 1985.   The trustee appointed by the court, respondent Fred Stanton Smith, immediately sold Miami Center to the Bank in consideration for cash and cancellation of the Bank's claim.   The trustee then distributed these and other assets to third-party creditors. Holywell Corporation filed a tax return for the fiscal year ending July 31, 1985.   The income for this fiscal year included capital gains earned in the sale of the Washington Properties.   Holywell asked the trustee to pay the taxes owed.   Neither the corporate debtors nor the trustee filed federal income tax returns for any fiscal year ending after July 31, 1985.   The income for these years included the capital gains earned in the sale of Miami Center and interest earned by reinvesting the proceeds.

In December 1987, the trustee sought a declaratory judgment from the Bankruptcy Court that he had no duty to file income tax returns or pay income tax under the federal income tax laws.   The United States and the debtors opposed the action.   The Bankruptcy Court declared that the trustee did not have to make any federal tax returns or pay any taxes.   85 B. R. 898 (SD Fla. 1988).   The District Court, in an unreported opinion, and the Court of Appeals, 911 F. 2d 1539 (CA11 1990), both affirmed.   The United States, in No.

90–1484, and the debtors, in No. 90–1361, each petitioned this Court for a writ of certiorari. We granted review. 500 U. S. 941 (1991).

## II

The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return. See 26 U. S. C. § 6151(a) ("[W]hen a return of a tax is required . . . the person required to make such return shall . . . pay such tax"). We conclude in this case that the trustee must pay the tax due on the income attributable to the corporate debtors' property because § 6012(b)(3) requires him to make a return as the "assignee" of the "property . . . of a corporation." We further hold that the trustee must pay the tax due on the income attributable to the individual debtor's property because § 6012(b)(4) requires him to make a return as the "fiduciary" of a "trust." Finally, we decide that the United States did not excuse the trustee from these duties by failing to object to the plan.

### A

We first consider the trustee's duties with respect to the corporate debtors. Section 6012(b)(3) provides:

> "(3) Receivers, trustees and assignees for corporations
> "In a case where a receiver, trustee in a case under title 11 of the United States Code, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns."

The parties disagree about whether the trustee in this case is a "receiver," a "trustee in a case under title 11 of

the United States Code [*i. e.*, the Bankruptcy Code]," or an "assignee." We hold that the trustee is an "assignee" of the corporate debtors under § 6012(b)(3). Because the parties do not argue that the trustee's duties would differ under another characterization, we decline to consider whether the trustee would qualify as a receiver or bankruptcy trustee.

The plan, as noted above, transferred the corporate debtors' estates to respondent Smith as trustee for the Miami Center Liquidating Trust. The respondents do not dispute that the trustee meets the usual definition of the word "assignee" in both ordinary and legal usage. See Webster's Third New International Dictionary 132 (1986) (defining an "assignee" as "one to whom a right or property is legally transferred"); Black's Law Dictionary 118–119 (6th ed. 1990) (defining an "assignee" as "[a] person to whom an assignment is made" and an "assignment" as "[t]he act of transferring to another all or part of one's property, interest, or rights"); cf. 26 CFR § 301.6036–1(a)(3) (1991) (defining an "assignee for the benefit of . . . creditors" as any person who takes possession of and liquidates property of a debtor for distribution to creditors). They argue, however, that courts have applied § 6012(b)(3) only in situations in which a person winds up the business of a dissolving corporation, see, *e. g.*, *First Nat. Bank of Greeley, Colo.* v. *United States*, 86 F. 2d 938, 942 (CA10 1936), or a person stands in the place of management in operating the day-to-day business of a distressed corporation, see, *e. g.*, *Louisville Property Co.* v. *Commissioner*, 140 F. 2d 547, 548 (CA6 1944). They conclude that § 6012(b)(3) cannot apply to the trustee in this case because he did neither. We find this argument unpersuasive.

Nothing in § 6012(b)(3) suggests that the word "assignee" is limited in the manner proposed by the respondents. The statute does not make dissolution necessary; it applies whether the corporation transfers "all" or "substantially all" of its property. It does not require the assignee to manage the corporation's business after the transfer of property; it

expressly requires the assignee to make a return "whether or not [the assigned] property or business is being operated." *Ibid.* We therefore conclude that § 6012(b)(3) applies to the trustee in this case. As the assignee of "all" or "substantially all" of the property of the corporate debtors, the trustee must file the returns that the corporate debtors would have filed had the plan not assigned their property to the trustee.

B

We next consider the trustee's duties with respect to the individual debtor, Theodore B. Gould. The parties agree that § 6012(b)(3) does not require the trustee to file a return as the "assignee" of Gould's estate because the section applies only to the assignee of the property of a corporation. Section § 6012(b)(4), however, provides:

"(4) Returns of estates and trusts
"Returns of an estate, a trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States Code shall be made by the fiduciary thereof."

The United States argues that the trustee must file under § 6012(b)(4) as the fiduciary of Gould's Chapter 11 "estate." The debtors join the United States' argument and also contend in the alternative that the trustee must file under the section as the fiduciary of a "trust." The respondents insist that the trustee is not acting as the fiduciary of either a bankruptcy estate or a trust within the meaning of § 6012(b)(4). Accordingly, they assert, the section does not require the trustee to file a return on behalf of Gould. We agree with the debtors that the trustee must file a return because he is the fiduciary of a trust of an individual.

The parties agree that Gould originally served as the fiduciary of his own bankruptcy estate when he became debtor in possession. See 11 U. S. C. § 1107(a). At confirmation, according to the United States, the bankruptcy plan substituted the trustee for Gould but did not alter the bankruptcy

estate. In other words, the United States argues, the trustee took Gould's place as the fiduciary of "an estate of an individual under chapter . . . 11." The United States points out that the Bankruptcy Code explicitly provides that a fiduciary may hold and administer property of the estate after confirmation of the plan, see 11 U. S. C. § 1123(b)(3), and that nothing prohibits the substitution of a third-party trustee for the debtor in possession. The United States, therefore, maintains that the trustee must file a return under § 6012(b)(4).

Whether or not the Bankruptcy Code permits a plan to place a new fiduciary in charge of an estate after confirmation, as the United States contends, we do not believe that a mere substitution occurred in this case. The plan, as quoted above, "declared and established" the new Miami Center Liquidating Trust. It then vested all of the assets of Gould's estate to respondent Smith as trustee. The plan did not simply substitute the trustee for Gould as the fiduciary of the estate. Rather, it created a separate and distinct trust holding the property of the estate and gave the trustee control of this property. The Bankruptcy Code expressly permits this arrangement. See § 1123(a)(5)(B) (authorizing a plan to transfer "all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan"). The trustee, therefore, is not acting as the fiduciary of Gould's bankruptcy estate.

The trustee, nonetheless, must make a return. Section 6012(b)(4), as the debtors assert, applies to the fiduciary of a trust as well as the fiduciary of a bankruptcy estate. We see no way for the respondents to deny that the Miami Center Liquidating Trust is a "trust" and that respondent Smith is its "fiduciary." A Treasury Regulation states:

> "Certain organizations which are commonly known as liquidating trusts are treated as trusts for purposes of the Internal Revenue Code. An organization will be considered a liquidating trust if it is organized for the

primary purpose of liquidating and distributing the assets transferred to it, and if its activities are all reasonably necessary to, and consistent with, the accomplishment of that purpose." 26 CFR § 301.7701–4(d) (1991).

The Miami Center Liquidating Trust clearly fits this description. The plan not only describes the entity as a trust, but also created it for the express purpose of liquidating Gould's estate and distributing it to creditors.

Respondent Smith, moreover, acted as the fiduciary of this trust. The Internal Revenue Code defines "fiduciary" as a "guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person." 26 U. S. C. § 7701(a)(6). A Treasury Regulation further specifies:

> "'Fiduciary' is a term which applies to persons who occupy positions of peculiar confidence toward others, such as trustees, executors, and administrators. A fiduciary is a person who holds in trust an estate to which another has the beneficial title or in which another has a beneficial interest, or receives and controls income of another, as in the case of receivers." 26 CFR § 301.7701–6 (1991).

The bankruptcy plan, as noted above, assigned the property of Gould's estate to the trustee and gave him powers consistent with this definition. Smith therefore acted as the fiduciary of a trust within the meaning of § 6012(b)(4).

The respondents raise two principal objections to this conclusion. First, they argue that Gould must pay the Miami Center Liquidating Trust's income taxes under the so-called "grantor trust" rules in the Internal Revenue Code. See 26 U. S. C. §§ 671–677. They note, in particular, that Treasury Regulation § 1.677(a)–1(d) specifies that "a grantor is, in general, treated as the owner of a portion of a trust whose in-

come is . . . applied in discharge of a legal obligation of the grantor." 26 CFR § 1.667(a)–1(d) (1991). They assert that Gould is the grantor of the liquidating trust and that, under this regulation, he owns the trust's income and must pay taxes on it. To support this position, the respondents cite *In re Sonner*, 53 B. R. 859 (ED Va. 1985), which applied the grantor trust provisions to a postconfirmation liquidating trust.

While we express no opinion on the results in *Sonner*, the facts are distinguishable. In *Sonner*, the property of the bankruptcy estate by the terms of the plan appears to have revested in the debtor upon confirmation. The debtor pursuant to a plan then placed some of this property in a trust created to pay his creditors. Under these circumstances, the Bankruptcy Court concluded, the debtor had created a grantor trust under Treasury Regulation § 1.677(a)–1(d). See *Sonner, supra*, at 860, 864. In this case, however, the property of Gould's bankruptcy estate did not revest in Gould. The plan, instead, placed all of the estate's property directly in the Miami Center Liquidating Trust. Gould himself did not contribute anything to the trust, and we thus fail to see how the respondents can characterize him as the grantor.

Second, the respondents argue that the trustee did not act as a fiduciary because he had almost no discretion in performing his duties under the plan. They assert that the trustee merely acted as a "disbursing agent" who distributed liquidated funds to the creditors. As the dissenting judge noted below, labels and characterizations cannot alter the trustee's status for the purpose of the tax law. 911 F. 2d, at 1547. Because the liquidating trust is a trust under the Internal Revenue Code and because respondent Smith's duties under the plan satisfy the description of a fiduciary in

the regulations, the restrictions on the trustee's discretion do not remove him from coverage under § 6012(b)(4).*

## C

The respondents finally assert that the trustee may ignore the duties imposed by §§ 6012 and 6151 because the Chapter 11 plan does not require him to pay taxes. They note that § 1141(a) of the Bankruptcy Code states that "the provisions of a confirmed plan bind . . . any creditor" whether or not the creditor has accepted the plan. They conclude that § 1141(a) precludes the United States, as a creditor, from seeking payment of any taxes. They add that the United States should have objected to the plan if it had wanted a different result. We disagree.

The United States is not seeking from the trustee any taxes that became due prior to his appointment. See Reply Brief for United States 13, n. 16. It simply asserts that the trustee, after his appointment, must make tax returns under § 6012(b) in the same manner as the assignee of the property of any corporation or the trustee of any trust. No tax liability becomes due under § 6151 until the time required for making those returns. See *Hartman* v. *Lauchli*, 238 F. 2d 881, 887 (CA8 1956); *Pan American Van Lines* v. *United States*, 607 F. 2d 1299, 1301 (CA9 1979). Even if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims. Cf. 11 U. S. C. § 101(10)

---

*The respondents also argue that the trustee does not have to pay taxes because the petitioners conceded in the Bankruptcy Court that "the trust is not a separate taxable entity." 85 B. R. 898, 900 (SD Fla. 1988). This "concession" cannot help the respondents. The petitioners asserted that the trust was not a separate taxable entity when they argued that the plan did not create a new trust but instead simply substituted the trustee for Gould as the fiduciary of the bankruptcy estate. If the respondents accept this position, which we reject above, then they would have to agree that respondent Smith has to make a return as the fiduciary of an estate.

(1988 ed., Supp. II) (defining "creditor" as used in § 1141(a) as an entity with various kinds of preconfirmation claims). For these reasons, the judgment of the Court of Appeals is

*Reversed.*