**UNITED STATES of America,**
**Plaintiff,**

v.

**STATE STREET BANK AND TRUST CO., as Trustee for Junior Subordinated Secured PIK Notes, Defendant,**

**Scott Cable Communications, Inc., Debtor, Intervenor–Defendant,**

and

**Media/Communications Partners L.P., Chestnut Street Partners, Inc., Milk Street Partners, Inc. and TA Investors, Intervenor–Defendants.**

No. 01–4605.

United States Bankruptcy Court, D. Delaware.

Dec. 12, 2003.

Francis A. Monaco, Jr., Kevin J. Mangan, Walsh, Monzack & Monaco, Wilmington, DE, Ira H. Goldman, Peter W. Benner, Kathleen M. LaManna, Shipman & Goodwin, LLP, Hartford, CT, for State Street Bank and Trust Company, as Indenture Trustee.

Thomas G. Macauley, Virginia Whitehill Guldi, Zuckerman Spaeder LLP, Wilmington, DE, Toni G. Wolfman, Euripides D. Dalmanieras, Foley Hoag LLP, Boston, MA, for Media/Communications Partners L.P., Chestnut Street Partners, Inc., Milk Street Partners, Inc. and TA Investors.

Colm F. Connolly, United States Attorney, Ellen Slights, Assistant U.S. Attorney, Office of the United States Trustee, Wilmington, DE, Alan Shapiro, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for United States of America.

Teresa K.D. Currier, Klett, Rooney, Lieber & Schorling, Wilmington, DE, Daniel H. Golden, David M. Zenksy, Mitchell P.

Hurley, Akin, Gump, Strauss, Hauer & Feld LLP, New York City, for Debtor.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion for summary judgment (Doc. # 119) filed by defendant State Street Bank and Trust Company, as Trustee for Junior Subordinated Secured PIK Notes ( the "Trustee"). By this adversary proceeding, the United States of America, on behalf of the Internal Revenue Service (the "IRS"), seeks to either recharacterize or subordinate the claim of the holders of the Junior Subordinated Secured PIK Notes (the "Secured PIK Notes"). For the reasons set forth below, the Court will deny the Trustee's motion.[1]

## BACKGROUND

On February 14, 1996 Scott Cable Communications, Inc. (the "Debtor") filed a voluntary petition for relief in this Court under Chapter 11 of title 11 of the United States Code (the "first case").[2] After a hearing on December 6, 1996, the Debtor's Second Amended Joint Plan of Reorganization (the "Plan") was confirmed (the "Confirmation Order"). Pursuant to the Plan, the Debtor's "Junior Subordinated Secured PIK Notes" were issued in exchange for the Debtor's "Junior Subordinated Unsecured PIK Notes" in the face amount of $38.9 million. As is clear from the title of these debt instruments, the Plan effected a conversion of unsecured debt into secured debt. The Plan was

---

1. The debtor Scott Cable Communications, Inc. and Secured PIK Noteholders Media/Communications Partners L.P., Chestnut Street Partners, Inc., Milk Street Partners, Inc. and TA Investors are intervenor-defendants in this adversary proceeding and have joined in the Trustee's motion.

2. Sections of the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq., will be cited herein as " § ___ ".

consummated and the Debtor emerged from Chapter 11.

On July 10, 1998 the reorganized Debtor executed an agreement to sell substantially all of its assets to InterLink Communications Partners, LLP ("InterLink") for approximately $165 million. The Debtor's tax basis in the assets was quite low relative to InterLink's purchase price so that the transaction posed a substantial capital gains tax. Also, the purchase price fell just short of covering all of Debtor's secured debt, with the Secured PIK Notes being the most junior secured debt. In August 1998 the Debtor solicitated a prepackaged plan of reorganization and on October 1, 1998 it filed a Chapter 11 petition in the Bankruptcy Court for the District of Connecticut (the "second case").

In the second case, the Debtor proposed a liquidating plan whereby the asset sale would close post confirmation and after the administration of the estate. With that timing of the sale closing, the resulting capital gains tax would occur outside the administration of the Chapter 11 case. The IRS objected to confirmation of the plan. In addition, on November 19, 1998 the IRS filed an adversary proceeding against the Debtor in the Connecticut Bankruptcy Court seeking to have the Secured PIK Notes recharacterized as equity. On December 11, 1998, the bankruptcy judge denied confirmation, finding that the principle purpose of the proposed plan was tax avoidance which is prohibited by § 1129(d).[3] *In re Scott Cable Communications, Inc.*, 227 B.R. 596, 604 (Bankr. D.Conn.1998). Specifically, the bankruptcy judge ruled as follows:

It is apparent that in order for [the Secured PIK Noteholders] to benefit from the Sale, the Plan would have to structure the Sale so that there would be no administrative capital gains tax and no future tax liability for [the Secured PIK Noteholders], and that is its principal purpose. Accordingly, the Plan does not escape the § 1129(d) prohibition, and it cannot be confirmed. *Id.*

On December 17, 1998 the IRS filed an amended complaint. The amended complaint added a second count whereby, pursuant to § 510(c), the IRS seeks to subordinate the claim of the Secured PIK Noteholders because of alleged inequitable conduct.

On January 14, 1999, the Connecticut Bankruptcy Court approved the sale of the assets to InterLink and the transaction closed on February 12, 1999. The sale resulted in a federal tax liability of $29,900,000 and a state liability of $7,500,000. The Connecticut Bankruptcy Court directed that approximately $30,000,000 of the sale proceeds be placed in escrow pending resolution of the IRS's assertion of priority of the tax claim ahead of the Secured PIK Noteholders' claim.

The Trustee moved for summary judgment in the adversary proceeding. On April 26, 1999 the motion was granted by the bankruptcy judge, finding that the adversary complaint was barred by *res judicata*. That decision was appealed and on March 12, 2001 the Connecticut District Court reversed and remanded, finding that *res judicata* did not apply because of inadequate notice.[4] Because this Court presid-

---

**3.** Section 1129(d) states in relevant part: "Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the

plan is avoidance of taxes." 11 U.S.C. § 1129(d).

**4.** The District Court found "that the IRS is not barred by principles of res judicata from proceeding with the instant adversary pro-

ed over the first case, on June 11, 2001 the Connecticut Bankruptcy Court transferred the adversary proceeding to this Court.

By its summary judgment motion here the Trustee asserts that IRS's complaint is "barred by principles of finality attaching to the confirmed plan of reorganization ordered by this Court in 1996." (Doc. # 163, p. 2)

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure applies to contested matters in a bankruptcy proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.[5] According to Rule 56(c) a judgment can be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine issue of material fact and the court will reach this determination after viewing the facts in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As a starting point, I set forth a brief discussion of the IRS's two theories for recovery.

### *Recharacterization*

The IRS first requests this Court to recharacterize the Secured PIK Notes. Specifically, the IRS asserts that those debt instruments should be recharacterized as equity. Although not specifically cited in the IRS complaint, the authority for recharacterization lies in both the Bankruptcy Code and the Internal Revenue Code. Section 385 of the Internal Revenue Code sets forth five factors used in determining if debt should be recharacterized as equity. *Selfe v. United States*, 778 F.2d 769, 773 (11th Cir.1985) (stating that the form of the transaction does not always dictate the substance and finding that "[t]his principle is particularly evident where characterization of capital as debt or equity will have different tax consequences"). Individual circuits also apply certain test to determine " 'whether a debtor-creditor relationship exists or a corporation-shareholder relationship exists.' " *See id.* (citations omitted) (setting forth the Eleventh Circuit's thirteen factor test); *Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 630 (6th Cir.1986) (setting forth the Sixth Circuit's eleven factor test).

A recent case, *Outboard Marine Corp. v. Quantum Industrial Partners*, 2003 WL 21697357, at *4 (N.D.Ill. July 22, 2003), raised the issue of recharacterization under the Bankruptcy Code. Although the circuits are split on the issue, the United States District Court for the Northern District of Illinois found that § 510(c)'s authority for equitable subordination did not preclude a recharacterization request. The court "recognized recharacterization as a tool that may be used by bankruptcy courts." *Id.* at *4.

### *Subordination*

■ Section 510(c) provides that "after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or

---

ceeding because it did not receive notice reasonably calculated, under the circumstances, to inform it that its rights might be modified by the Delaware Plan." *United States v. State St. Bank & Trust Co., (In re Scott Cable Communications, Inc.)*, 259 B.R. 536, 548 (D.Conn.2001).

5. Rule 7056 states "Rule 56 F.R. Civ. P. applies in adversary proceedings." Fed. R. Bankr.P. 7056.

part of another allowed claim." Section 510(c) does not set forth the requirements for equitable subordination but the Fifth Circuit Court of Appeals, *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir.1977), enumerated the now widely accepted conditions that must be satisfied before equitable subordination is appropriate. *See United States v. Noland*, 517 U.S. 535, 538, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *Citicorp Venture Capital Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986–87 (3d Cir.1998). Under the *Mobile Steel* standard a claim can be subordinated if: (1) the claimant engaged in inequitable conduct; (2) the misconduct caused injury to the creditors or an unfair advantage to the claimant; and (3) equitable subordination is not inconsistent with the Code. *Mobile Steel*, 563 F.2d at 700.

A scenario supporting inequitable conduct goes as follows. The bankruptcies were part of a two part tax avoidance scheme intended to favor Secured PIK Noteholders over the IRS. The Debtor foresaw the significant tax burden resulting from a sale of assets prior to the first bankruptcy and structured the two bankruptcies whereby the first was an essential condition to the second. The first part required the Debtor to file bankruptcy and have a plan approved by this Court which created for former unsecured noteholders a secured claim, i.e., the "Secured" PIK Notes. The second step required a second bankruptcy after the Debtor executed the asset purchase agreement with InterLink. The post confirmation sale closing would result in a substantial capital gains tax, but the security position of the Secured PIK Noteholders would come ahead of the unsecured tax obligation. According to this scenario, such a two step scheme could constitute inequitable conduct warranting

§ 510(c) subordination of the Secured PIK Notes claim to the IRS tax claim.

### Finality

■ The Trustee, in its motion before the Connecticut Bankruptcy Court, asserted two separate grounds for summary judgment: (1) finality of the Confirmation Order and (2) the *res judicata* effect of that order. The Connecticut Bankruptcy Court found in favor of the Trustee on the *res judicata* issue, but the District Court reversed the Bankruptcy Court, holding that *res judicata* was not applicable to the claim by the IRS because of inadequate notice. Although it is not entirely clear to me that finality is a principle separate and apart from *res judicata*, I will assume that the two Connecticut courts did not intend to render a decision on the finality issue as raised by the Trustee.

The Trustee argues that the Confirmation Order was final and the IRS is bound by the order and cannot disturb it by negating the security position of the Secured PIK Notes.

In relevant part, § 1141(a) states that "the provisions of a confirmed plan bind the debtor, ... and any creditor." In relevant part, § 101(10) provides that a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Here, the IRS did not have a claim until the assets were sold, which occurred several years after the entry of the Confirmation Order. Thus, the IRS was not a creditor in the first case and did not become a creditor until after the second case was commenced.

The Trustee cites several cases where the courts have held that confirmation orders are final and not subject to modification or revocation outside the strictures of

the Code.[6] *See Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989); *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 (2d Cir.1997). I find the Trustee's reliance on these cases to be misplaced. In *Szostek* the creditor who attempted to challenge the confirmation was a pre-petition creditor, contrary to the IRS in this case, which, as to the first case, is a post-confirmation creditor. Likewise, *Stoll* involved a post confirmation attack on a plan by a creditor who received notice of an improper plan provision (a release in favor of a non-debtor) but did not object to the plan prior to confirmation. With respect to *Corbett*, my reading of this case suggests that it did not involve finality at all. Indeed, the holding was that because of *res judicata* a release provision in the plan (releasing an affiliate of the debtor from an ERISA liability to a trustee of a pension plan) could not be challenged by the pension plan trustee post confirmation. Of course, the *res judicata* issue has already been decided in the matter before me. *See In re Scott Cable Communications, Inc.*, 259 B.R. 536 (D.Conn.2001).

The Trustee also cites *In re Northtown Realty Co., L.P.*, 215 B.R. 906 (Bankr. E.D.N.Y.1998). This case involved a debtor who filed a second Chapter 11 case after plan confirmation and consummation in its first Chapter 11 case. A mortgagee creditor in the first Chapter 11 case and the second Chapter 11 case moved to dismiss the second Chapter 11 case. The court saw the debtor's tactic as an attempt to modify the plan of the first Chapter 11 case and since the first Chapter 11 case plan had been fully consummated, the court found the second Chapter 11 case to be tantamount to a post-substantial consummation modification prohibited by § 1127(b). The *Northtown* case has no application here.

A case on point here is *Holywell Corp. v. Smith*, 503 U.S. 47, 58, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992), where the United States Supreme Court held that a confirmation plan could not bind creditors with post-confirmation claims. In that case the debtors filed Chapter 11 petitions and entered into a reorganization plan, which required a trustee to liquidate and distribute all of the trust property to the creditors. *Id.* at 50–51, 112 S.Ct. 1021. The trust property was sold and capital gains taxes were incurred. *Id.* at 51, 112 S.Ct. 1021. The trustee sought a declaratory judgment that he had no duty to pay any tax on the sale proceeds. The bankruptcy court agreed and was affirmed by the district court and the court of appeals. *Id.* The trustee claimed that the confirmation plan bound any creditor whether or not the creditor accepted the plan and that the United States should have objected to the plan if it wanted to collect the taxes. *Id.* at 58, 112 S.Ct. 1021. The Supreme Court disagreed and reversed. It explained that "[e]ven if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims." *Id.*

This proposition is equally applicable to the IRS here.

The broad language of § 1141(d) raises the issue of whether a creditor can be deprived of its claim by operation of law

---

**6.** The IRS does not assert that §§ 1127 and 1144 are implicated here. I agree they are

not.

if the creditor did not have notice of the Chapter 11 case. *See 11 Collier on Bankruptcy* ¶ 1141.06 (15th ed. rev.2003). In the interest of giving the debtor a "fresh start," subsections (c) and (d) seem to permit the discharge of a debt despite a lack of notice. *Id. Collier* suggests, however, that this practice would violate the Due Process Clause of the United States Constitution. *Id.; see also Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.)*, 198 B.R. 519, 529 (Bankr. N.D.Ill.1996) (stating that "[n]otice is the cornerstone underpinning Bankruptcy Code procedure" and finding that if the confirmation plan applied to post-confirmation injuries the injured party would have been deprived of due process notice or bankruptcy notice); *Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790, 797 (N.D.Ill.1997) (holding a claimant injured post-confirmation was not bound by the confirmation order because such an attempt would "deny them of their rights to due process" for failure to receive notice).

As noted by the United States District Court for the District of Connecticut in *In re Scott Cable Communications*, technically the Fifth Amendment's Due Process Clause does not apply to governmental entities. 259 B.R. at 543 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966)). The court, however, adopted an applicable standard and stated that " '[i]n the case of governmental entities, "adequate notice" must satisfy requirements of fundamental fairness.' " *Scott Cable*, 259 B.R. at 544 (citing *In re Friedman*, 184 B.R. 883, 888 n. 1 (Bankr.N.D.N.Y.1994)). As per the finding of the Connecticut District Court on the *res judicata* issue, applying the fundamental fairness standard, the IRS did not receive sufficient notice of the jeopardy to its rights in the first case. It strikes me as anomalous to argue, as does the Trustee, that notwithstanding that the Connecticut District Court held that the IRS was not bound by the Confirmation Order in the first case because it received inadequate notice, the IRS can be bound by the Confirmation Order under a finality theory where the IRS can be viewed as a stranger to the first case.

Certainly as to the second count, and perhaps both counts, the issue is not what happened only in the first case but what happened in the first case and the second case. If the first case was an important element to the success of the second case, then to talk about finality only as it relates to the Confirmation Order in the first case is too narrowly focused. The IRS is entitled to make a factual presentation of what happened in the first case and what was planned to happen in the second case. Whether those facts will support either or both theories for recovery remains to be seen, but that entitlement cannot be foreclosed by summary judgment at this stage of the proceeding.

## CONCLUSION

For the reasons set forth above, The Trustee's summary judgment motion is denied.