[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13104
Non-Argument Calendar
_____

D.C. Docket Nos. 5:12-mc-02201-KOB; 08-bkc-80266-JAC-7

In Re: STRICKLAND AND DAVIS INTERNATIONAL, INC.

                                                          Debtor.

_____

ROY W. DAVIS,
VONCILE DAVIS,
CINDY TAYLOR,
MELISSA TERRELL,

                                                  Plaintiffs-Appellants,

versus

TAZEWELL T. SHEPARD, III,
(Trustee),

                                                  Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 11, 2015)

Before TJOFLAT, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal arises from the Chapter Seven bankruptcy of appellant Strickland and Davis International, Inc. ("Strickland" or "the Strickland Corporation"). Appellants Strickland, Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell all seek to appeal an order of the bankruptcy court affirming the Final Report of Strickland's bankruptcy estate trustee, Tazewell T. Shepard, III (the "Trustee"). The district court found appellants' notices of appeal to be untimely and insufficient, and consequently dismissed them for lack of jurisdiction. Alternatively, the court also dismissed on the ground of equitable mootness. We disagree that all of the appeal notices were untimely,[1] but we do agree that they were equitably moot. We therefore affirm.

## I.    BACKGROUND

In April 1996, Strickland entered into a joint venture with Samara Consultant Group ("Samara") to pursue grain sales in the Republic of Yemen, with the parties agreeing to split evenly any profits resulting from their business endeavors. At some point thereafter, Strickland contracted with the Republic of Yemen for the delivery of grain, which contract the Republic subsequently

---

[1] As discussed, we agree that four of the notices were untimely.

breached.  Despite obtaining an arbitration award in its favor from the Grain and Feed Trade Association in London for $27.1 million, Strickland ultimately settled its claim against the Republic for $16.325 million.

Strickland forwarded $1 million of the settlement recovery to Samara.  As an equal joint venture partner, Samara felt itself entitled to a greater share, and so filed a breach of contract lawsuit in the Northern District of Alabama in 2002 (the "breach of contract action" or "contract action").  Two years later, on April 21, 2004, a jury found in favor of Samara, awarding it $1,075,851.37.  Then, upon the recommendation of a magistrate judge, the district court imposed a constructive trust on proceeds Roy Davis had received from Strickland's settlement with the Republic of Yemen, even though Davis had earlier been dismissed from the contract action, based on a concern that the transfer of funds was potentially fraudulent.

In November 2004, the district court entered a final judgment reflecting the jury's verdict and pre-judgment interest, which it later amended by consent of the parties.  The amended judgment required immediate payment into the court's registry of $250,000, with the remainder of the judgment due within thirty days. The amended judgment further provided that, upon payment of a 10% supersedeas bond, the judgment's execution would be automatically stayed pending the outcome of an appeal to this Court.

3

Roy Davis made the initial $250,000 payment to the district court's registry but, facing a liquidity crisis, he struggled to pay the remainder and ultimately filed for Chapter 11 bankruptcy. Eventually—more than two years later—the parties reached an agreement that required Roy and Voncile Davis to convey to the district court the mortgage on their property, which was worth more than $1.5 million at the time.

Amid and following the parties' payment negotiations, a complicated web of appeals, remands, and motions occurred, none of which are germane to the present appeal. The important takeaway from the considerable procedural history is that, in the breach of contract action, the district court dissolved the constructive trust placed on assets that Roy Davis had received from the Yemeni settlement, while the underlying judgment against Strickland, against which Davis conveyed to the court $250,000 and a mortgage, remained in place.

The next important development came in January 2008, when Strickland filed a Chapter Seven bankruptcy petition (the "Chapter Seven case"). Because the breach of contract action was still ongoing, the district court in that case and the bankruptcy court in the Chapter Seven case issued orders noting concurrent jurisdiction over the parties' claims. Later, in November 2010, the district court in the breach of contract action granted summary judgment in favor of the Trustee— who had been substituted as the plaintiff upon his appointment as trustee of

4

Strickland's bankruptcy estate—and referred the case to the bankruptcy court for further proceedings. The losing parties—Roy Davis, Voncile Davis, Cindy Taylor, Melissa Terrell (the "Davis defendants")—appealed the summary judgment order to this Court, but we dismissed the appeal as untimely.

Thus, when the bankruptcy court received the case with the district court's summary judgment ruling intact, it ordered the clerk of the district court to "disburse and remit" to the Trustee the $250,000 deposited into its registry by Roy Davis. The bankruptcy court further ordered that, "in the event of a ruling" by this Court on an intervening motion for reconsideration filed by the Davis defendants, the clerk of the district court must "immediately transfer and assign to the Trustee the real estate mortgage given by Roy Davis and his wife, Voncile Davis, against their residence in favor of the [district court] in the amount of $1,134,622.33." We denied the Davis defendants' motion for reconsideration on September 28, 2011, and the district court conveyed to the Trustee the Davis's mortgage soon thereafter.

Following a number of hearings regarding attorneys' fees and the Trustee's compensation, in March 2012 the Trustee submitted his Final Report to the bankruptcy court. In his report the Trustee (1) proposed to transfer to Samara—Strickland's only creditor by virtue of the judgment in the breach of contract action—the mortgage conveyed to him by Roy and Voncile Davis via the clerk of the district court and (2) requested compensation for his administration of

Strickland's bankruptcy estate.  No objections having been filed, the bankruptcy court affirmed the Trustee's Final Report on May 1, 2012.

But then, on May 10, 2012, Roy Davis—in both his individual capacity and on behalf of Strickland[2]—filed a notice of appeal, to the district court, of the bankruptcy court's May 1 order.  Therein, Davis alleged multiple grounds for appeal, including: the right to an automatic stay in the bankruptcy court by virtue of status as a "defendant in the underlying case"; questions regarding the finality and status of orders and motions before the bankruptcy and district courts; suspicion of a fraud committed on the court by A.M. Samara; and assertions that the "settlement and compromise is unconstitutional" and violates the Patriot Act.

The bankruptcy court notified Roy Davis that the May 10 notice of appeal was insufficient for (1) lack of a certificate of service, (2) lack of a signature by the movant, and (3) lack of an accompanying "Official Form 17[.]"  The court allowed Davis fourteen days from entry of the order to correct the deficiencies.  On May 29, 2012, Davis submitted three sets of documents:  first, notices of appeal on behalf of Strickland signed *pro se* by Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell (the "Strickland Notices"); second, notices of appeal for Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell in their individual

---

[2] Or so it appeared to the district court.

capacities (the "Individual Capacity Notices"); and third, certificates of service signed by Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell.

In an order issued on June 18, 2014, the district court ruled that the Strickland Corporation and Individual Capacity Notices were insufficient. As to the former, the district court observed they were signed by Roy Davis, who is not an attorney.[3] Reasoning that a corporation cannot proceed *pro se*, the district court dismissed the Strickland Corporation's appeal. As to the Individual Capacity Notices, the district court found them to be untimely. Specifically, the court reasoned that the order these individuals sought to appeal was issued on May 1, 2012, but they did not file their notices of appeal until May 29, 2012. Because this date fell outside the fourteen-day window imposed by Bankruptcy Rule 8002, the court concluded that it could not consider the three appeals.

As to Roy Davis, the district court concluded that it could not consider his appeal for three reasons. First, Davis failed to file his notice of appeal by May 25, 2012, which the district court calculated to be the deadline, based on the bankruptcy court's May 11 order giving him fourteen days to do so. Second, Davis did not have a personal financial stake in Strickland's Chapter Seven

---

[3] The court described the Strickland Notices as signed by Roy Davis, alone. Actually, Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell, each, submitted a notice on Strickland's behalf. This fact does not alter the district court's or this Court's analysis, though: other than the signatories, none of whom are attorneys, the Strickland Notices are identical.

proceeding and therefore lacked standing to appeal the bankruptcy court's May 1 order. And third, the appeal was moot because (1) Samara had foreclosed upon Davis's property and (2) the bankruptcy plan had been "fully completed."

So concluding it lacked jurisdiction to consider the notices of appeal filed by Strickland, Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell, the district court dismissed them. This appeal followed.

## II.    STANDARD OF REVIEW

Whether made by the bankruptcy or district court, we review determinations of law de novo. *In re Williams*, 216 F.3d 1295, 1296 (11th Cir. 2000). We likewise review questions of subject matter jurisdiction de novo. *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 593 (11th Cir. 2015).

## III.    ANALYSIS

This case requires the Court to evaluate the district court's treatment of three sets of notices of appeal:  first, the Strickland Notices, filed on behalf of the company by Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell; second, the Individual Capacity Notices filed by Roy Davis, Voncile Davis, Cindy Taylor, and Melissa Terrell; and third, to the extent the district court considered it an amended notice filed in response to the bankruptcy court's May 11, 2012 order, the notice of appeal filed by Roy Davis in his individual capacity (the "Roy Davis

8

Notice").[4]  All three sets were filed May 29, 2012, and all three seek to challenge the bankruptcy court's May 1, 2012 order affirming the Trustee's Final Report and allowing him to recover compensation for administering Strickland's bankruptcy estate.  As explained below, we agree that the appeals should have been dismissed.

### A.    Timeliness of the Notices of Appeal

Appellants proceed *pro se*.  While the Court construes liberally the pleadings of *pro se* litigants, it does not excuse them from their duty to abide by procedural rules.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).  With certain exceptions inapplicable to this case, Federal Rule of Bankruptcy Procedure 8002 requires a notice of appeal to be filed "within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1).  Compliance with this timeline is mandatory and jurisdictional:  an appellate court lacks authority to consider an untimely notice of appeal.  *In re Williams*, 216 F.3d at 1298.

### i.    The Individual Capacity Notices Were Not Timely Filed

The bankruptcy court entered its order affirming the Trustee's Final Report and permitting him to receive compensation for his services on May 1, 2012.

---

[4]  We are not totally sold on the argument that Roy Davis filed the May 10, 2012 notice both on behalf of Strickland and also in his individual capacity.  Nevertheless, we will give Davis the benefit of the doubt and evaluate his May 29, 2012 notice as both an initial filing and also as an amended notice filed in response to the bankruptcy court's May 11, 2012 order.  *See supra* at note 1.

Voncile Davis, Cindy Taylor, and Melissa Terrell attempted to appeal the court's decision by filing their Individual Capacity Notices on May 29, 2012. Because this date falls outside of the fourteen-day window imposed by Rule 8002, the Individual Capacity Notices are untimely. Fed. R. Bankr. P. 8002(a)(1). And because the notices are untimely, the district court correctly determined that it lacked jurisdiction over these appeals and was right to dismiss them. *See In re Williams*, 216 F.3d at 1296–98.

### ii.    The Strickland and Roy Davis Notices Were Timely Filed

We conclude, however, that the Strickland and Roy Davis Notices were timely. Strickland and Roy Davis filed their initial notice of appeal on May 10, 2012, which was within fourteen days of the bankruptcy court's May 1 order. But, as the bankruptcy court pointed out in an order issued on May 11, 2012, their notice was deficient based on a (1) lack of a certificate of service, (2) lack of a signature by the movant, and (3) lack of an accompanying "Official Form 17[.]" Accordingly, the bankruptcy court granted the parties fourteen days to correct the deficiencies.

The district court calculated the fourteen days given Strickland and Roy Davis to correct their deficient filings as creating a May 25, 2012 deadline to file these corrected notices of appeal. And if one just counts fourteen days from May 11, then May 25 would appear to be the deadline. Yet, we read Bankruptcy Rule

9006 as extending the deadline beyond May 25. First, the bankruptcy court's May 11 order imposed a specific time period in which its recipients, Strickland and Roy Davis, were required to act. Because the court served that order by mail, "three days are added after the prescribed period would otherwise expire[.]" Fed. R. Bankr. P. 9006(f). Thus, if May 25 would be the fourteenth day after issuance of the order, then Rule 9006(f) added three days to that calculation and extended the deadline for Strickland and Roy Davis to amend their notice of appeal to May 28.

Second, Rule 9006 provides that a time period specified in a court order "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C). Given operation of the three-day rule described above, the period for amendment of the original notice of appeal ended May 28, 2012. But May 28, 2012 was Memorial Day—a legal holiday. Fed. R. Bankr. P. 9006(a)(6)(A); *see* 2012 Holiday Schedule, United States Office of Personnel Management, *available at* http://www.opm.gov/policy-data-oversight/snow-dismissal-procedures/federal-holidays/ (last accessed Apr. 15, 2015). Accordingly, Strickland and Roy Davis had until the end of the day on May 29, 2012 to file their amended notices of appeal. Both complied with this deadline, so the district court erred by concluding that the Roy Davis Notice was untimely, based on a late filing of his amended notice of appeal.

11

**B.      The District Court Erred in Dismissing Strickland's Notice**

So too did the district court err in its treatment of the Strickland Notices. Specifically, the court incorrectly concluded it lacked jurisdiction over Strickland's appeal because the company submitted its notices of appeal *pro se*. In the court's opinion, "[w]ell-settled law holds that a court lacks jurisdiction over a notice of appeal filed on behalf of a corporation by someone other than an attorney." Not quite.

Insofar as the district court concluded that corporations cannot proceed *pro se* but must be represented by counsel, it recited a correct proposition of law. Indeed, this Court has explicitly stated so. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (citing *Commercial & R.R. Bank of Vicksburg v. Slocumb*, 10 L. Ed. 354 (1840); *In re K.M.A., Inc.*, 652 F.2d 398 (5th Cir. Unit B 1981); and *Sw. Exp. Co. v. Interstate Commerce Comm'n*, 670 F.2d 53 (5th Cir. 1982)); *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.") and *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 609–10 (11th Cir. 1984).

That said, the effect of Strickland's *pro se* notice of appeal is unclear. Citing an unpublished, and therefore non-precedential, case from this Court, *Securities &*

12

*Exchange Commission v. Merchant Capital, LLC*, 486 Fed. App'x 93, 94 n.1 (11th Cir. 2012), the district court determined that submission of the Strickland Notices by non-attorneys deprived it of jurisdiction over the appeals.  Yet, *Merchant Capital* notwithstanding, our binding precedent instructs that a court facing such a circumstance should afford a corporation the opportunity to obtain counsel *before* dismissing its appeal.[5]  *See Palazzo*, 764 F.2d at 1386 and *In re K.M.A., Inc.*, 652 F.2d at 399.  And to the extent that the district court relied on one of our unpublished opinions as persuasive authority, we note that other unpublished opinions from within this Circuit go the other direction, and require notice to a corporation before dismissing its appeal.  *See Riggins v. Polk Cnty.*, —Fed. App'x—, 2015 WL 1037245, at *3 (11th Cir. Mar. 11, 2015); *Stirzaker v. Howard*, 197 Fed. App'x 852, 853 n.1 (11th Cir. 2006); *Fed. Trade Comm'n v. Gem Merch. Corp.*, 1995 WL 623168, at *1 (11th Cir. Sept. 1, 1995).  Likewise, our sister circuits also require notice.  *See, e.g.*, *United States v. Hagerman*, 549 F.3d 536, 538 (7th Cir. 2008) (Posner, J.) ("The usual course when a litigant not entitled to litigate pro se loses its lawyer in the midst of the case is to give it a reasonable opportunity to find a new one."); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873–74 (5th Cir. 2004) ("In virtually every case in which a district court dismissed

---

[5]  To the extent the bankruptcy court's May 11 order notified Strickland that its notice of appeal "must be signed and dated by the movant[,]" such did not suffice to put Strickland on notice that it must be represented by counsel or else suffer dismissal of its appeal.

the claims (or struck the pleadings) of a corporation that appeared without counsel, the court expressly warned the corporation that it must retain counsel or formally ordered it to do so before dismissing the case."); and *United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (the same).

Moreover, in light of the Supreme Court's recent efforts to clarify its jurisdictional jurisprudence, an argument that a corporation's faulty submission of a *pro se* notice of appeal automatically deprives a court of jurisdiction seems questionable. *See e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–88 (2014) (clarifying the concept of "prudential standing"); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253–54 (2010) (distinguishing between merits questions and questions of jurisdiction); and *Bowles v. Russell*, 551 U.S. 205, 215–16 (2007) (Souter, J., dissenting) ("'Jurisdiction,' we have warned several times in the last decade, 'is a word of many, too many, meanings.' . . . In recent years, however, we have tried to clean up our language[.]") (internal citations omitted). Indeed, the fact that a court can hold onto a case for whatever period of time it chooses to permit a corporation to retain counsel suggests that a *pro se* notice of appeal filed by a corporation does *not*, by itself, rob a court of jurisdiction over the appeal.

In addition, the Supreme Court has stated that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*,

14

540 U.S. 443, 452–56 (2004) (citing U.S. Const., art. III, § 1); *see also Bowles*, 551 U.S. at 212 ("Congress decides what cases the federal courts have jurisdiction to consider") and *In re Indu Craft, Inc.*, 749 F.3d 107, 112–14 (2d Cir. 2014) (describing the Supreme Court's recent consideration of jurisdictional rules and claims-processing rules).  Here, the requirement that corporations be represented by counsel is not a creation of Congress, but is rather a judicial interpretation of 28 U.S.C. § 1654.  *See Memon*, 385 F.3d at 873 n.4 ("[T]he only authority for dismissing a corporation for failure to retain counsel, absent a court order or local rule, appears to be based on a judicial interpretation of 28 U.S.C. § 1654.").  It thus does not implicate a court's jurisdictional grant from Congress.  Put another way, whether a corporation can proceed *pro se* in a bankruptcy appeal is a far different question from whether the district court possesses jurisdiction over that appeal pursuant to 28 U.S.C. § 158(a).  *See Morrison*, 561 U.S. at 254.

For these reasons, whether the district court possessed the authority to dismiss Strickland's appeal under some other authority, such as a claims-processing rule or its inherent power to manage the cases before it, Strickland's *pro se* notices did not deprive the district court of jurisdiction.  In any case, the court should have first afforded Strickland the opportunity to retain counsel before dismissing its appeal.

15

**C.    The Court Correctly Dismissed the Appeals as Equitably Moot**

However, notwithstanding the timeliness of the Roy Davis Notice and the notice of the need to retain counsel to which Strickland was entitled, the district court correctly dismissed the parties' appeals on grounds of equitable mootness.

"The mootness doctrine, as applied in a bankruptcy proceeding, permits the court[] to dismiss an appeal based on its lack of power to rescind certain transactions." *In re Holywell Corp.*, 911 F.2d 1539, 1543 (11th Cir. 1990), *overruled on other grounds*, 503 U.S. 47 (1992). "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief. . .[T]he court must determine whether the 'reorganization plan has been so substantially consummated that effective relief is no longer available.'" *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992) (quoting *Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 820 F.2d 376, 379 (11th Cir. 1987)).

Substantial consumation, while the most significant consideration for a court, is not the sole consideration. Equitable mootness "necessarily involves many subsidiary questions[.]" *Id.* at 1069 n.11. To wit, in "evaluat[ing] the ultimate issue of whether a confirmation plan has progressed to the point where effective judicial relief is no longer a viable option[,]" the reviewing court makes the following queries:

> Has a stay pending appeal been obtained? If not, then why not? . . . If [the plan has been substantially consummated], what kind of

16

transactions have been consummated?  What type of relief does the appellant seek on appeal?  What effect would granting relief have on the interests of third parties not before the court?  And, would relief affect the re-emergence of the debtor as a revitalized entity?

*Id.*

As noted above, the district court provided equitable mootness as an alternative ground for dismissing the Strickland and Roy Davis Notices.  In arriving at that conclusion the court noted that:  (1) "[a]ppellants did not file a motion for a stay pending appeal of the order approving the Trustee's Final Report in the bankruptcy court or in [the district] court"; (2) "[t]he Trustee's approved distribution plan in the bankruptcy case has not only been substantially consummated—it has been fully completed"; (3) "[a]ll of the Trustee's planned transfers and distributions were made more than two years ago"; (4) [a]ny relief the [a]ppellants could receive in [the] appeal would have the effect of frustrating the orderly Chapter 7 liquidation process" and would result in "further litigation because the Trustee would [] have to recover the property from Samara"; (5) appellants' efforts to overturn the order distributing Roy and Voncile Davis's cash and mortgage to Samara have been consistently rejected by federal courts since 2004; and (6) Samara is not a party to the appeal, so it is unclear whether the district court would be Constitutionally permitted to fashion relief for appellants.  And while discussed as an alternative ground for dismissal independent of equitable mootness, the district court also noted that the transfer of the Davis's

17

mortgage to Samara had already occurred, and that Samara had already foreclosed on the property.

For the same reasons, we agree that the parties' appeals should be dismissed for equitable mootness. First, and most importantly, the Trustee completed his liquidation and distribution of Strickland's estate in 2012 and submitted his Request for Discharge that August. On this point, the Trustee conveyed to Samara the mortgage on Roy and Voncile Davis's property and Samara has completed foreclosure proceedings. Reversal of the bankruptcy court's confirmation of the Trustee's Final Report would therefore require an undoing of state foreclosure proceedings and any resulting sales of the property. This would not only alter the terms of the Trustee's liquidation and distribution plan, it would gut them entirely. Even if this Court or the district court below could undertake such actions, they would lead to inequitable results given the nearly three-year reliance on the Trustee's liquidation and distribution of Strickland's estate by A.M. Samara and other individuals who were not involved in the proceedings below. *See Miami Ctr. Ltd. P'ship.*, 838 F.2d at 1553.

Second, appellants neither attempted to nor received a stay of the confirmation of the Trustee's Final Report pending this appeal. While they did move for a stay, pending an interlocutory appeal, they filed this *before* the bankruptcy court confirmed the Trustee's Final Report, and that motion was

18

denied.  *See In re Club Assocs.*, 956 F.2d at 1069–71 (discussing the importance of a stay pending appeal) and *In re Kahihikolo*, 807 F.2d 1540, 1542 (11th Cir. 1987) ("This court has repeatedly held that where a debtor fails to obtain a stay pending appeal of an adverse bankruptcy court order and the creditor subsequently conducts a foreclosure sale, the court of appeals is powerless to grant relief, and the appeal must be dismissed as moot.").

And finally, appellants' briefs on appeal clearly establish that their opposition to the bankruptcy court's confirmation of the Trustee's Final Report arises from a suspected fraud committed on the district court *in the breach of contract action*, and not from a legitimate objection to the Final Report. Specifically, they claim that A.M. Samara alleged he was a citizen of Egypt but he is actually (1) a Palestinian national, (2) a "member of Hamas Terrorist Org. and associated with other Terrorist Org. (Documented C.I.A. Data Base)[,]" and (3) a "stateless" individual "under [the] [j]urisdiction [of the] P.L.O. [who] must comply with the 'Return to Palestine Policy.'"  As a Palestinian, appellants claim, A.M. Samara was "prohibited from owning property, owning small business[es], [and] owning majority shares in compan[ies], in any Arab League Countries" and therefore must have formed Samara Consultant Group "solely to defraud and or extort money from [c]ompanies or people."  Consequently, appellants believe

19

A.M. Samara "never had [s]tanding []or [s]ubject [m]atter to file [a] case in U.S. Court."

Leaving aside the merit or lack thereof of these allegations, appellants' arguments constitute a collateral attack on the jurisdiction of the district court in the breach of contract action. Appellants are attempting to file a belated Rule 60(d) motion under the guise of an appeal. This they cannot do. Such a motion should have been made before the district court in the breach of contract action. It cannot be filed in this Court on appeal of the bankruptcy court's affirmance of the Trustee's Final Report: something we earlier told appellants *in this very case*. That's not all: appellants *have* previously presented their attack on the jurisdiction of the district court in the breach of contract action to the courts with authority to adjudicate such claims, and those courts roundly rejected appellants' arguments.

Thus, for the above reasons, the appeals of the bankruptcy court's affirmance of the Trustee's Final Report are equitably moot and the district court correctly dismissed them. The opinion of the district court is therefore

**AFFIRMED.**