T.C. Memo. 2006-43

UNITED STATES TAX COURT

LEONARD O. PARKER, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4053-03L.          Filed March 15, 2006.

Leonard O. Parker, Jr. pro se.

Hieu C. Nguyen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  This is a case under sections 6320 and
6330.[1]  Petitioner failed to pay income tax liabilities for 1992,
1993, and 1994 (years at issue).  As a result, respondent filed a
Notice of Federal Tax Lien (NFTL).  The issues for decision are:

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended.  Amounts are rounded to
the nearest dollar.

(1) Whether the amount assessed in each year at issue was correct; (2) whether petitioner's April 7, 1994, bankruptcy filing barred the assessment of his 1994 income tax liability; (3) whether the assessments for the tax years at issue were timely; (4) whether penalties under section 6651(a)(2) should be abated; (5) whether interest on the tax liabilities for all tax years at issue should be abated; (6) whether petitioner received proper notice of the filing of the NFTL; and (7) whether collection alternatives were properly considered.

## FINDINGS OF FACT

Petitioner resided in Torrance, California, when he filed the petition.  Prior to becoming a California resident, he was a resident of New Orleans, Louisiana.

Petitioner filed tax returns in which he reported income of $37,353 for 1992, $12,265 for 1993, and $8,123 for 1994, and income taxes due of $4,924.32, $2,874.95, and $1,133.74, for those respective years.  Petitioner failed to pay the income taxes due other than a partial payment of $156 for 1994. Respondent assessed petitioner's 1992-94 Federal income tax liabilities on September 20, 1993, August 5, 1996, and October 9, 1995, respectively.  The assessment for each tax year was made within 3 years from the date the return for that year was filed.

Petitioner filed for bankruptcy on three separate occasions: The bankruptcy proceeding filed on April 7, 1994, was dismissed

June 28, 1996; the proceeding filed on November 26, 1997, was closed May 12, 1998; and the proceeding filed on June 30, 1998, was closed October 27, 1998.

In 1999, petitioner filed two Forms 656, Offer-in-Compromise, to settle the 1992-94 tax liabilities. The first offer filed on February 18, 1999, was rejected on June 6, 1999, after petitioner failed to respond to respondent's request for verifiable financial statements. The second offer, filed August 10, 1999, was rejected on September 26, 2000, because petitioner again failed to provide necessary financial information and failed to provide an original signature on the Form 656.

On March 21, 2001, respondent's Automatic Collection Service (ACS) requested an NFTL. On March 29, 2001, an NFTL was prepared which was filed on April 5, 2001, by respondent with the New Orleans Parish Recorder's Office. Petitioner had no offer-in-compromise in effect or pending at the time the NFTL was filed.

On April 5, 2001, the New Orleans Taxpayer Advocate Services Office (Taxpayer Advocate) told petitioner a 45-day "hold" would be placed on all collection actions to allow petitioner to submit another offer-in-compromise.

On April 11, 2001, respondent timely sent, via certified mail, a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, to petitioner regarding his unpaid income tax liabilities for the years at issue. The Notice indicated on

April 5, 2001, a Federal tax lien was filed with respect to petitioner's unpaid income tax liabilities for the years at issue. The lien was recorded on April 17, 2001.

On April 18, 2001, the Taxpayer Advocate sent a letter to petitioner explaining why his previous offers were rejected. The letter also stated petitioner needed to complete another offer containing current financial information and file it through the Taxpayer Advocate's Office.

On May 13, 2001, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing. Petitioner's request contained his New Orleans address and telephone number. In his hearing request, he alleged the notice of tax lien filing was untimely, an offer-in-compromise was pending, and the Taxpayer Advocate had placed a hold on collection.

On July 13, 2001, the Taxpayer Advocate's Office sent another letter to petitioner expressing: "[we] have never received [your] current Form 656 or financial statements with verification." Again, petitioner failed to work with respondent to resolve his 1992-94 tax liabilities.

Petitioner became a permanent resident of Southern California later in 2001.

Respondent's Appeals Office sent a letter dated March 19, 2002, to petitioner's New Orleans address informing him that Appeals had scheduled a conference with petitioner on March 27,

2002 (i.e., 8 days after the letter was sent), in respondent's Jackson, Mississippi, Appeals Office.  Jackson is approximately 180 miles from New Orleans.

Appeals requested petitioner to provide any documents to be considered during the Jackson hearing no later than 3 days after the date Appeals sent the letter.  Further, Appeals did not inform petitioner the proposed conference was the hearing under section 6320(b) petitioner had requested when he submitted the Form 12153.

Petitioner received the Appeals' March 19, 2002, letter on March 25, 2002, 2 days before the date Appeals had chosen for the conference.  The same day, petitioner faxed a response to Appeals stating he was unable to attend or adequately prepare for the conference in Jackson, and the Appeals deadline for sending affidavits and documents in advance of the conference had already passed.  Petitioner stated he would be available for the conference via telephone.  Petitioner and Appeals held their telephone conference on March 27, 2002.

On February 12, 2003, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) in which respondent determined the filing of the tax lien for 1992-94 was appropriate.

Petitioner timely filed a petition with this Court. The case was tried before this Court in Los Angeles, California.

At trial, respondent contended: (a) Respondent was not required to provide petitioner an opportunity for a hearing at the Appeals Office closest to petitioner's residence, and (b) petitioner waived any right to a hearing because petitioner had a telephone conference with Appeals in lieu of attending the conference in Jackson, Mississippi. Parker v. Commissioner, T.C. Memo. 2004-226.

The Court ruled respondent was required to provide petitioner with an opportunity for a hearing at the Appeals Office closest to his residence. Id. Further, the Court found petitioner did not explicitly or implicitly waive his right to a hearing at respondent's Appeals Office. Id. The Court remanded the case to respondent's Office of Appeals with instructions to offer petitioner a face-to-face conference at the Appeals Office closest to petitioner's residence in Southern California. Id.

On December 15, 2004, petitioner met with Settlement Officer Adlai Climan (Mr. Climan) at respondent's Los Angeles Appeals Office. This office was the closest Appeals Office to petitioner's Southern California address.

At the hearing, petitioner asserted the amounts due were incorrect, the assessments for tax years 1992-94 were untimely, the NFTL was not timely filed, and the penalties and interest on the assessed liabilities should be abated. In addition, petitioner asserted his April 7, 1994, bankruptcy filing barred

the assessment of his 1994 tax liability on October 9, 1995. Collection alternatives were also discussed at length. Petitioner indicated he wished to enter into an offer-in-compromise or an installment agreement as a means of settling the tax liability.

Petitioner and Mr. Climan discussed petitioner's current financial circumstances. Petitioner stated he received State assistance of $221 monthly, and $149 monthly in food stamps. He further asserted he had no assets. The parties' discussion focused upon the possible use of an offer-in-compromise.

As a result of his alleged limited resources, petitioner informed Mr. Climan he was not financially able to pay the $150 offer-in-compromise application fee. Mr. Climan told petitioner that if his representations concerning his financial position were true, he would qualify for the application fee waiver. Further, Mr. Climan assured petitioner if everything petitioner stated regarding his current financial position was true, if petitioner "put an offer-in-compromise for $100 on [Mr. Climan's] desk [he] would make it fly like a bird."

At the end of the hearing, Mr. Climan gave petitioner a previously prepared letter which stated petitioner had until January 5, 2005, to submit the Form 656 Offer-in-Compromise and

Form 433-A.[2]  The letter further stated that if Mr. Climan did not "<u>receive</u> such documents by January 5, 2005, [he would] make a determination based on the information contained in the case file."  In addition to the letter, petitioner was provided all the necessary forms with accompanying instructions on how to complete an offer-in-compromise.

Petitioner failed to submit the offer or any financial statement.  As a result, no collection alternatives were considered.  Mr. Climan closed the case and determined the NFTL was appropriate and in accordance with all procedural guidelines.

A further trial of this case was held in Los Angeles, California, on March 23, 2005.  At trial, petitioner reiterated the issues presented during the section 6320 hearing.  Petitioner further asserted that the Appeals officer at that hearing had not addressed the issues and concerns raised, but had attempted to talk him into submitting another offer-in-compromise.  Petitioner testified he did not submit the offer-in-compromise because he could not afford the $150 application fee.  In addition, he disagreed with Mr. Climan over whether the recorded lien would remain in effect until the compromised balance of the tax liability was completely paid.

---

[2] Form 433-A, Collection Information Statement for Wage Earners and Self Employed Individuals.

At the conclusion of trial, petitioner agreed to submit an offer-in-compromise and respondent agreed to expedite the review process. The parties' agreement was incorporated into an order issued by the Court on March 23, 2005. Petitioner failed to mention to respondent and the Court that petitioner intended the submission of an offer to be contingent upon respondent's withdrawing the NFTL when the offer was accepted. On March 23, 2005, Mr. Climan and his manager met with petitioner. Petitioner was given detailed instructions as to how to complete all the forms necessary to submit an offer-in-compromise. During this meeting Mr. Climan again informed petitioner that respondent would not withdraw the NFTL until the compromised liability was paid. Later, respondent's counsel reiterated respondent's position concerning removal of the lien.

On April 21, 2005, petitioner informed counsel for respondent he would not submit an offer.

### OPINION

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a taxpayer who is liable for a tax and fails to pay the tax liability after demand for payment. The lien generally arises at the time the assessment is made and continues until the liability for the assessed amount is paid or becomes unenforceable because of lapse of time. Sec. 6322. Pursuant to section 6323(a), a lien is not

valid against certain third parties until the Secretary files a notice of lien with the appropriate public office under section 6323(f).

Section 6320 sets forth the notice and hearing procedures which must be followed when a tax lien is filed. Under this provision the Secretary is required to send written notice to the taxpayer liable for the tax not more than 5 business days after the NFTL is filed. Sec. 6320(a)(1) and (2). The notice must advise the taxpayer of his right to appeal. Sec. 6320(a)(3). A taxpayer, who so requests, must be granted a hearing before an impartial Appeals officer. Sec. 6320(b) and (c). The hearing is generally conducted in accordance with the procedures described in section 6330(c), (d), and (e).

Section 6330(c) prescribes the matters a taxpayer may raise at an Appeals Office hearing, such as, spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection, including an offer-in-compromise or installment agreement. Sego v. Commissioner, 114 T.C. 604, 609 (2000). The existence and amount of the underlying tax liability can be contested at an Appeals Office hearing if the taxpayer did not receive a notice of deficiency for the taxes in question or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B).

If the taxpayer does not agree with the Appeals officer's written determination, the taxpayer can appeal the determination to the Tax Court or to a United States District Court (if the Tax Court does not have jurisdiction over the underlying tax liability).  Sec. 6330(d)(1).

To determine the correct standard of review, the Court must first decide whether petitioner's underlying tax liability is properly at issue.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The term "underlying tax liability" under section 6330(c)(2)(B) includes amounts self-assessed under section 6201(a), together with penalties and interest.  Sec. 6201(a)(1); Montgomery v. Commissioner, 122 T.C. 1, 9 (2004); sec. 301.6203-1, Proced. & Admin. Regs..

The amount of the underlying tax liability may be placed at issue if the taxpayer did not receive a statutory notice of deficiency or otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see Behling v. Commissioner, 118 T.C. 572, 576-577 (2002).  In this case, petitioner was not issued a notice of deficiency and did not have a prior opportunity to dispute the tax liability.  Therefore, the proper standard of review for the arguments challenging the underlying tax liability is de novo.  Sego v. Commissioner, supra at 609-610.

Petitioner makes several arguments: (1) The amounts assessed for tax years 1992-94 were incorrect; (2) petitioner's April 7, 1994, bankruptcy filing barred the assessment of his 1994 tax liability; (3) the assessments for tax years 1992-94 were untimely; (4) penalties under section 6651(a)(2) should be abated; (5) interest on the tax liabilities for all tax years at issue should be abated; (6) petitioner did not receive proper notice of the filing of the NFTL; and (7) collection alternatives were not properly considered.

The facts in this case do not support petitioner's arguments. Petitioner asserts the assessed amounts of taxes are incorrect for all tax years at issue. However, the taxes so assessed were reported by petitioner on his own Federal income tax returns. The assessed taxes were properly entered on the NFTL. The Court finds no evidence or reason to believe that any of the amounts are incorrect.

Petitioner asserts his April 7, 1994, bankruptcy barred the assessment of his 1994 tax liability. A bankruptcy petition operates as an automatic stay of certain acts to collect, assess, or recover any claim against the debtor that arose before the commencement of the case in bankruptcy.[3] 11 U.S.C. sec. 362(a)(6)

---

[3] Effective for bankruptcy proceedings commenced after Oct. 22, 1994, the Bankruptcy Code was amended to allow for an assessment of any tax during a bankruptcy stay. 11 U.S.C. sec. 362(b)(9)(D) (2000).

(1994). Personal income taxes are due on the date the return is required to be filed. Sec. 6151(a); Holywell Corp. v. Smith, 503 U.S. 47, 58 (1992); Pan Am. Van Lines v. United States, 607 F.2d 1299, 1301 (9th Cir. 1979). Because the liability for the 1994 income tax arose after the commencement of the case in bankruptcy, the assessment of that tax was not subject to the bankruptcy stay. The Court finds the bankruptcy stay did not bar the assessment of petitioner's 1994 income tax liability.

Petitioner asserts the assessments for the years at issue were untimely. Section 6501(a) generally provides that an assessment of income tax liability is to be made within 3 years after the tax return was filed. The Court finds petitioner's income tax for each of the years at issue was assessed within 3 years of the date the tax return for that year was filed.

Petitioner asserts penalties should be abated because they accumulated due to respondent's delays and payment will cause an undue hardship because of his limited financial resources. Section 6651(a)(2) imposes an addition to the tax for failure to pay the amount shown as tax on the return by the prescribed date. To avoid the addition to tax, petitioner must make an affirmative showing the failure to pay was due to reasonable cause. Sec. 301.6651-1(c), Proced. & Admin. Regs. A showing of reasonable cause requires the taxpayer to demonstrate he exercised ordinary business care and prudence in providing for the payment of his

tax liability and nevertheless was unable to pay the tax or would have suffered undue hardship if he had paid it on the due date. Id.

On several occasions petitioner asserted he has very limited financial resources, but he has failed to provide financial evidence every time he has been asked to substantiate these statements. Petitioner is unable to show his failure to pay was due to reasonable cause. The Court concludes petitioner is liable for the addition to tax under section 6651(a)(2) for failure to make timely payment of income tax for the years at issue.

Petitioner asserts the payment of interest should be abated because it accumulated to his detriment due to respondent's delays and payment will cause an undue hardship because of his limited financial resources.

We apply an abuse of discretion standard when reviewing the Commissioner's failure to abate interest. Krugman v. Commissioner, 112 T.C. 230, 239 (1999). Section 6404(e) permits the Commissioner to abate interest with respect to an error or delay in payment of tax resulting from an employee of the Internal Revenue Service's being erroneous or dilatory in performing a ministerial act. There is no provision under section 6404 or the regulations promulgated thereunder that allows for the abatement of interest due to financial hardship.

Petitioner has not alleged, and the record contains no evidence, that respondent committed any erroneous or dilatory acts requiring abatement of interest. Thus, the Court concludes respondent's decision not to abate interest is not an abuse of discretion.

Petitioner asserts he did not receive proper notice of the filing of the NFTL with respect to his unpaid income tax liabilities for the years at issue. Under section 6320 the Secretary shall furnish the person described in section 6321 with written notice of the filing of a notice of lien under section 6323. The notice may be sent by certified mail to the person's last known address not more than 5 business days after the day of filing the Federal tax lien. Sec. 6320(a)(2). Petitioner was duly sent notice within 5 business days of the filing of the Federal tax lien. Thus, the Court concludes respondent did not abuse his discretion in determining petitioner received proper notice of the filing of the NFTL.

Finally, respondent did not abuse his discretion in determining further consideration of collection alternatives was futile. Petitioner repeatedly failed to cooperate and respond to respondent's requests for financial information or to submit a processable offer-in-compromise.

Accordingly, the Court holds that respondent's determination upholding the Federal tax lien was not an abuse of his

discretion.  The Court further holds respondent may proceed with collection of tax years 1992, 1993, and 1994.

The Court, in reaching its holding herein, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.