T.C. Memo. 2009-45

UNITED STATES TAX COURT

GREGORY H. HAUBRICH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26422-06L.　　　　　Filed February 24, 2009.

<u>Frederick J. O'Laughlin</u>, for petitioner.

<u>William F. Castor</u>, for respondent.


MEMORANDUM OPINION

MARVEL, <u>Judge</u>:　Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed with the
collection of petitioner's 2002 Federal income tax liability.

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether respondent abused his discretion in issuing a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2002 (final notice) while petitioner's bankruptcy case was pending, and (2) whether respondent abused his discretion in rejecting petitioner's installment agreement offer.

## Background

The parties submitted this case fully stipulated under Rule 122. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Oklahoma when his petition was filed.

## I.   Petitioner's Bankruptcy Proceedings

On June 12, 2002, petitioner and his former wife, Betty A. Haubrich (Ms. Haubrich), filed a bankruptcy petition under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Western District of Oklahoma (bankruptcy court).[2]  On January 28, 2003, the bankruptcy trustee filed an adversary complaint to compel petitioner to turn over bankruptcy estate property; the bankruptcy trustee also objected to petitioner's discharge. On June 27, 2003, the bankruptcy court issued an Order Approving Compromise of Controversy, pursuant to which petitioner was to pay $22,000 to the bankruptcy trustee in

---

[2]On Jan. 8, 2003, the bankruptcy court discharged Ms. Haubrich from all dischargeable debts.

settlement of the adversary proceeding.  However, petitioner paid only $1,700 of the compromise amount.[3]  On February 24, 2004, the bankruptcy court entered a $20,300 judgment against petitioner, which was nondischargeable.

Petitioner was neither granted nor denied a discharge in the bankruptcy case.  On August 6, 2005, the bankruptcy case was closed.

## II.  Petitioner's Tax Collection Proceeding

Petitioner filed his 2002 Form 1040, U.S. Individual Income Tax Return, but failed to pay $6,578 of the $6,879 tax liability reported on the return.  On January 28, 2005, respondent issued petitioner the final notice.[4]  On February 25, 2005, respondent received petitioner's timely Form 12153, Request for a Collection Due Process Hearing.  In an attachment to his Form 12153 petitioner stated that he disagreed with the proposed levy because it would cause him extreme hardship and also because respondent issued the final notice after petitioner had filed a bankruptcy petition.

---

[3]The parties stipulated that the bankruptcy court found that petitioner had paid $3,700 to the trustee.  However, the bankruptcy court's judgment stated that petitioner had paid $1,700.

[4]The record contains only the first page of the final notice, which does not state to which year the final notice relates.

On August 30, 2006, Settlement Officer Minnie L. Banks (Ms. Banks) mailed petitioner a letter scheduling a telephone hearing for October 12, 2006.[5] Ms. Banks requested that petitioner provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, Form 433-B, Collection Information Statement for Businesses, and supporting documents. Ms. Banks also stated that petitioner must have filed all required Federal tax returns to be eligible for alternative collection methods, such as an installment agreement or offer-in-compromise. On September 19, 2006, Ms. Banks sent petitioner a letter rescheduling the telephone conference to October 31, 2006, pursuant to a request of petitioner's representative, Frederick J. O'Laughlin (Mr. O'Laughlin).[6]

On October 31, 2006, Mr. O'Laughlin submitted petitioner's Form 433-A, Form 433-B, and supporting documents, which showed that petitioner was an attorney and sole owner of the Haubrich Law Firm, P.C. Mr. O'Laughlin also submitted to Ms. Banks

---

[5]Although the final notice related to 2002 only, on his Form 12153 petitioner requested a hearing with respect to "200 [sic], 2002, and 2003". The header of the Aug. 30, 2006, letter from Ms. Banks to petitioner mistakenly stated: "Tax Period(s) Ended: 12/2001 12/2003". However, in the letter Ms. Banks stated that petitioner's hearing request was timely only with respect to 2002.

[6]Mr. O'Laughlin again requested to reschedule the hearing, but Ms. Banks denied the request.

petitioner's offer to enter into an installment agreement to pay his unpaid tax liability.

Ms. Banks reviewed the Form 433-A and Form 433-B petitioner submitted and determined that petitioner had received income from his corporation as distributions rather than wages and, consequently, had incorrectly reported the payments on his Federal income tax returns. Ms. Banks also concluded that petitioner's corporation was not making Federal tax deposits and had not filed required Forms 941, Employer's Quarterly Federal Tax Return, Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Forms 1120S, U.S. Income Tax Return for an S Corporation.[7]

On October 31, 2006, Ms. Banks held a telephone hearing with Mr. O'Laughlin. Ms. Banks stated that the installment agreement offer faxed earlier that day could not be considered because petitioner was not in compliance. Ms. Banks then temporarily transferred the call to the Appeals team manager who explained that an installment agreement could not be considered because petitioner reported income from his law practice as distributions rather than wages.

---

[7]According to Ms. Banks's case activity record, which is part of the record, Ms. Banks also reviewed respondent's transcripts of petitioner's account. In the case activity record Ms. Banks stated that petitioner was "not in compliance with estimated tax payment." However, the case activity record does not state for which years petitioner was not in compliance with the estimated tax payment requirement.

During the October 31, 2006, hearing Mr. O'Laughlin argued that the final notice was invalid as it was issued during petitioner's bankruptcy proceeding. Ms. Banks explained that respondent's records showed that petitioner filed a bankruptcy petition in June 2002 and the bankruptcy case was closed in April 2004. Mr. O'Laughlin stated that the case closing date was incorrect. On November 13, 2006, Mr. O'Laughlin sent to Ms. Banks a copy of the final decree in petitioner's bankruptcy case establishing that the bankruptcy case was closed on August 6, 2005.[8]

On November 17, 2006, respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) with respect to 2002 sustaining the proposed levy action. The notice of determination stated that Ms. Banks verified that all applicable laws and procedures were met, considered all issues raised, and balanced

---

[8]During the hearing Mr. O'Laughlin also argued that petitioner's Form 12153 was timely for 2001, 2002, and 2003. Ms. Banks explained that the final notice was issued by respondent's Oklahoma City office, and it was for 2002 only. On Mar. 14, 2005, respondent's Philadelphia office issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2001 and 2003. Consequently, petitioner's Form 12153 was premature with respect to 2001 and 2003 because he submitted it on Feb. 25, 2005. On May 30, 2006, Mr. O'Laughlin submitted to respondent's Philadelphia office a copy of the same Form 12153. During the hearing Ms. Banks explained that the second submission of the Form 12153 was not a timely request for a hearing with respect to 2001 and 2003 because respondent did not receive it within the 30-day deadline.

the efficiency and intrusiveness of the proposed collection action.  In the notice of determination respondent's Appeals Office determined that the proposed levy was appropriate and the installment agreement could not be considered because "the taxpayer is not [in] compliance according to the law."  With respect to issues petitioner raised, the attachment to the notice of determination stated that petitioner had offered a collection alternative in the form of an installment agreement.  The attachment also stated that the Appeals team manager had explained to Mr. O'Laughlin during the October 31, 2006, hearing that petitioner's installment agreement

> was not a viable option because the income Mr. Haubbrich [sic] receives from his Corporation was incorrectly reported on Mr. Haubrich's 1040 tax returns.  The income received by Mr. Haubrich was reported as distributions whereas it should have been reported as wages because Mr. Haubrich is the sole owner and employee of the Corporation.  * * *

The attachment to the notice of determination also described Ms. Banks and Mr. O'Laughlin's conversation regarding the correct date when the bankruptcy case was closed.

## Discussion

### I.   Section 6330

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  If the person requests a hearing, a

hearing shall be held before an impartial officer or employee of the Internal Revenue Service Office of Appeals.  Sec. 6330(b)(1), (3).  At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a notice of deficiency for the tax liability or did not otherwise have an earlier opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must determine whether the proposed levy action may proceed.  The Appeals Office is required to take into consideration:  (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action.  Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing.  Where the underlying tax liability is not in dispute, the Court will review the determination of the

Appeals Office for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 182 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner does not dispute the underlying tax liability for 2002. Accordingly, we review respondent's determination for abuse of discretion. See Lunsford v. Commissioner, supra at 185.

II. Petitioner's Automatic Stay Argument

Petitioner contends that respondent abused his discretion in upholding the levy because the notice of determination was based on an invalid final notice. He asserts that the final notice was invalid because respondent issued it on January 28, 2005, which was after June 12, 2002, the date petitioner had filed his bankruptcy petition, and before August 6, 2005, the date petitioner's bankruptcy case was closed. Accordingly, petitioner argues, respondent issued the final notice in violation of the automatic stay.

Title 11 U.S.C. sec. 362(a)(1) (2006) provides that after a bankruptcy petition is filed all entities are stayed from commencing or continuing "a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this

title, or to recover a claim against the debtor that arose before the commencement of the case under this title". Title 11 U.S.C. sec. 362(a)(6) (2006) provides that a bankruptcy petition also operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title". Title 11 U.S.C. sec. 362(b)(9) (2006) provides that the following actions are not violations of an automatic stay: "(A) an audit by a governmental unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns; or (D) the making of an assessment for any tax".

We have previously held that a final notice of intent to levy after a taxpayer has failed to pay his taxes constitutes a commencement of an administrative action against a taxpayer within the meaning of 11 U.S.C. sec. 362(a)(1). See Smith v. Commissioner, 124 T.C. 36, 43 (2005); Beverly v. Commissioner, T.C. Memo. 2005-41. However, an administrative action against a taxpayer is not affected by the automatic stay if such action pertains to a claim arising after a bankruptcy petition is filed. See Parker v. Commissioner, T.C. Memo. 2006-43. For this purpose Federal income tax liability arises no sooner than the end of the taxable year. See id.; Dixon v. United States ex. rel. IRS, 210 Bankr. 610, 614 (Bankr. W.D. Okla. 1997), affd. 218 Bankr. 150 (Bankr. 10th Cir. 1998). Therefore, the Government's claim to

petitioner's 2002 Federal income tax liability arose no earlier than December 31, 2002, which is after June 12, 2002, the date on which petitioner filed his bankruptcy petition. Because the claim to the tax liability arose after petitioner filed his bankruptcy petition, it is a postpetition claim, and the final notice was not subject to the automatic stay provisions of the Bankruptcy Code. See Parker v. Commissioner, T.C. Memo. 2006-117; Parker v. Commissioner, T.C. Memo. 2006-43. Accordingly, respondent did not abuse his discretion in issuing the final notice while petitioner's bankruptcy case was pending.

III. Rejection of the Installment Agreement Offer

Petitioner contends that respondent abused his discretion by rejecting petitioner's request for an installment agreement on the ground that "another taxpayer distributed money to petitioner". Petitioner also contends that respondent abused his discretion by using another taxpayer's filing noncompliance as a ground for rejecting petitioner's installment agreement. For the reasons described below, we will remand this case to respondent's Appeals Office for reconsideration of petitioner's installment agreement proposal.

Section 6159(a) authorizes the Secretary "to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or

partial collection of such liability."  Accepting or rejecting an installment agreement proposed by a taxpayer is within the discretion of the Commissioner.  See sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs.  We review the Commissioner's rejections of installment agreement proposals for abuse of discretion.  See Orum v. Commissioner, 123 T.C. 1, 12-13 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Schulman v. Commissioner, T.C. Memo. 2002-129.

Respondent's Appeals Office stated in the notice of determination that Ms. Banks was unable to consider petitioner's installment agreement because petitioner was "not [in] compliance according to the law."  The attachment to the notice of determination explains that petitioner's noncompliance consisted of incorrect reporting of income from his law practice.  The record does not suggest that petitioner failed to report income from his professional corporation; rather, Ms. Banks rejected the installment agreement proposal because she determined that "The income received by Mr. Haubrich was reported as distributions whereas it should have been reported as wages because Mr. Haubrich is the sole owner and employee of the Corporation."

Part 5 of the Internal Revenue Manual (IRM) contains guidelines and instructions for Internal Revenue Service employees with respect to collection process.  IRM pt. 5.1.11.6.7 provides that the Employment Tax Program is responsible for

determining when income of corporate officers should be reported as wages.[9]  1 Administration, IRM (CCH), pt. 5.1.11.6.7(1), at 15,300 (May 27, 1999).  The IRM instructs reviewing officers to refer a case to the Employment Tax Program "when it is determined during an investigation that a taxpayer may be treating employees as independent contractors or officers may be taking draws, loans, dividends, professional or administrative fees, etc., to avoid reporting taxable wage."  Id. pt. 5.1.11.6.7(2).  Although it appears that Ms. Banks, the reviewing officer, should have referred the case to the appropriate Employment Tax Program for a determination of whether petitioner's professional corporation and/or petitioner were properly classifying and reporting income distributed by the professional corporation to petitioner, Ms. Banks did not make the referral.  Instead she concluded that petitioner[10] was not in compliance, and as a result, she refused to consider petitioner's request for an installment agreement.

Ms. Banks's concern about the behavior of petitioner and his professional corporation is understandable given the emphasis

---

[9]The Employment Tax Program responsibilities involve, inter alia, determining the appropriateness of income tax on wages of employees, employer tax and employee Social Security tax, and tax for unemployment insurance.  See 1 Administration, IRM (CCH), pt. 5.1.11.6.7(1), at 15,300 (May 27, 1999).

[10]An entry in Ms. Banks's activity record states that Ms. Banks also determined that petitioner's corporation was not in compliance with the requirements to file Forms 941, 940, and 1120S and was not making Federal tax deposits.

that the IRM places on present and future compliance in evaluating collection alternatives. However, it appears that Ms. Banks attributed the alleged noncompliance of a separate but related professional corporation to petitioner in a manner that may be contrary to the provisions of the IRM. In general the IRM instructs the reviewing officer to consider the taxpayer's compliance with all filing requirements before granting an installment agreement. See, e.g., IRM pt. 5.14.1.5.1(1) ("Filing and paying compliance must be considered prior to determining that the best manner of paying delinquent taxes is through an installment agreement."), 5.14.1.2(9)(E) (the taxpayer must file current tax returns and pay current deposits), 5.14.1.3(4)(D) (the taxpayer must be in compliance with filing requirements), 5.14.1.5.1(4) (the taxpayer must be in compliance with all filing requirements before an installment agreement can be approved) (July 12, 2005). However, the IRM draws a distinction between noncompliance by the taxpayer seeking a collection alternative and noncompliance by a related taxpayer. For example, IRM pt. 5.14.4.3 (July 12, 2005) addresses the issue of noncompliance by a related entity and the impact of that noncompliance on a request for an installment agreement made by the taxpayer and the related entity. It provides that "If the person or entity that is missing the returns does not file the required returns, a recommendation for rejection can be given * * * regarding only

the person or entity that is not in compliance, and the taxpayer that is in compliance may be granted an installment agreement (if appropriate)."  IRM pt. 5.14.4.3(1) (July 12, 2005).

The Appeals Office did not determine that petitioner failed to file a required return or that he failed to report the distributions he received from his professional corporation during 2002 and later years.  The Appeals Office also did not determine that petitioner reported the distributions he received in a manner that was inconsistent with the way the professional corporation classified and paid the distributions.  We fail to see how petitioner was not in compliance with a filing obligation when he filed his 2002 return and reported the distributions he received in a manner consistent with the classification and payment of the distributions by the professional corporation.[11] The noncompliance that the notice of determination identified was the alleged noncompliance of a related taxpayer.  The IRM appears

---

[11]In her case activity record Ms. Banks states that petitioner "is not in compliance with estimated tax payment." However, the notice of determination contains no finding with respect to whether petitioner has a current obligation to make estimated tax payments or that he was failing to comply with that obligation.  If petitioner is continuing to receive distributions from his professional corporation that are not being treated as wages, petitioner may well have an obligation to make estimated tax payments, and a failure to do so is grounds for refusing to consider collection alternatives.  See Schwartz v. Commissioner, T.C. Memo. 2007-155 (upholding the Commissioner's determination to proceed with the proposed collection action when the Appeals Office determined that the taxpayer was not in compliance with the estimated tax payment requirement).

to require that the alleged noncompliance be referred to the Employment Tax Program for investigation, but Ms. Banks apparently did not do so. Instead she summarily concluded that petitioner had failed to report his income from his professional corporation as wages and that this failure was sufficient to reject his collection alternative. Absent some explanation as to why the Appeals Office was entitled to consider the alleged noncompliance of a related taxpayer as the noncompliance of petitioner, we cannot conclude on this record that the Appeals Office did not abuse its discretion in refusing to consider petitioner's proffered installment agreement and in concluding that collection action could proceed.

Accordingly, we shall remand this case to respondent's Appeals Office to consider whether petitioner is in compliance within the meaning of relevant IRM provisions and, if so, whether petitioner's request for an installment agreement is appropriate.

We have considered the remaining arguments made by the parties, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.